IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| REDBOX AUTOMATED RETAIL, LLC, | |
| Plaintiff, | |
| v. | No. |
| XPRESS RETAIL LLC, | |
| Defendant. | |

### COMPLAINT FOR TRADEMARK INFRINGEMENT, TRADE DRESS INFRINGEMENT, AND FALSE ADVERTISING

Plaintiff Redbox Automated Retail, LLC ("Redbox" or "Plaintiff"), for its Complaint against Defendant Xpress Retail LLC ("DVDXpress" or "Defendant"), hereby alleges as follows:

### Introduction

1.      Redbox is the nation's leading, low-cost provider of new-release DVDs for consumers to rent for home entertainment. Redbox has operated its DVD rental service through its automated vending machines for over a decade. DVDXpress competes with Redbox by offering its own new-release DVD rental services through automated vending machines. Unable to compete with Redbox fairly, DVDXpress is attempting to drive customers away from Redbox to its own DVD rental service by (i) redesigning its vending machines to copy Redbox's federally registered unique and distinctive vending machine coloration so as to attract customers familiar with Redbox's high-quality service; (ii) falsely advertising that newly released films are available through DVDXpress's service before they are available through Redbox's service; (iii) infringing on Redbox's federally registered mark REDBOX through the stylization of its

vending machines and in the metadata for its website so as to attract customers interested in Redbox; and (iv) copying Redbox's distinctive vending machine and DVD case designs. DVDXpress circulated its false advertisements as widely as possible by plastering them across every interface through which customers may encounter DVDXpress, including its website, its mobile applications, its social media feeds (including Twitter and Facebook), its vending machines, its point-of-sale signage, and its DVD cases.

2.     DVDXpress has succeeded in its efforts to confuse customers into mistaking DVDXpress vending machines for those belonging to Redbox, to the point that DVDXpress has posted warning signs next to the return slots in its redesigned vending machines indicating that customers should not return Redbox DVDs to DVDXpress machines.  By deceiving customers into using DVDXpress vending machines under the belief that they are associated with Redbox and misleading customers into using DVDXpress's rental service under the false belief that newly released films are categorically available through DVDXpress before they are available through Redbox, DVDXpress is unfairly competing with Redbox and has directly harmed Redbox's business.

3.     Redbox seeks relief from this Court to prevent DVDXpress from further deceiving and confusing customers, as well as damages to compensate for the significant harm DVDXpress has already inflicted upon Redbox.  Specifically, Redbox seeks: (i) an injunction preventing DVDXpress from continuing to confuse and deceive customers through the use of the color red on its vending machines; (ii) an injunction preventing DVDXpress from making further false and misleading statements regarding the availability of DVDs through DVDXpress's service and Redbox's service; (iii) a disgorgement of the profits DVDXpress has wrongfully generated through the use of Redbox's federally registered mark and Redbox's distinctive trade

2

dress; and (iv) an award of damages to compensate Redbox for the harm caused by DVDXpress's willful and deceptive conduct.

## The Parties

4.      Redbox is a Delaware limited liability company with its principal place of business in Oakbrook Terrace, Illinois.  Redbox is the nation's leading, low-cost alternative for consumers to rent new-release DVDs for home entertainment.  Redbox rents DVDs to consumers through innovative, consumer-friendly means:  automated, self-service kiosks located at tens of thousands of retail locations throughout the United States and Puerto Rico.

5.      Upon information and belief, Defendant Xpress Retail LLC (f/k/a Rio Acquisition Partners LLC) is a Florida limited liability company with a principal office at 7750 Okeechobee Boulevard, Suite 4-425, West Palm Beach, Florida 33411.  Upon information and belief, DVDXpress owns and operates a network of DVD rental kiosks throughout the United States under the name DVDXpress.

6.      Xpress Retail LLC [1] filed an application to register the fictitious name "DVDXpress" with the Florida Department of State in 2015, representing that it was the owner of this fictitious name.  Upon information and belief, Xpress Retail LLC has continually operated under the DVDXpress fictitious name since at least 2015 to the present. [2]

---

[1] An assumed name application (Registration Number G15000048127) was filed in the name of Rio Acquisition Partners LLC on May 14, 2015 and signed by Jason Tanzer.  A second assumed name application (Registration Number G15000125108) was filed in the name of Xpress Retail LLC on December 11, 2015 and signed by David Gershman.

[2] Upon information and belief, HLTW Holdings LLC ("HLTW Holdings") filed an application to register the fictitious name "DVDXpress" with the Florida Secretary of State on May 18, 2015 (only four days after Xpress Retail LLC's filing), representing that HLTW Holdings was the owner of this fictitious name.  This application was also signed by Jason Tanzer.  Upon information and belief, HLTW Holdings LLC was a Florida limited liability company with its principal place of business at 7750 Okeechobee Boulevard, Suite 4-425, West Palm Beach, Florida 33411 until its voluntary dissolution on or around June 1, 2017, when HLTW

3

7.     Upon information and belief, Xpress Retail LLC has been authorized to transact business in the state of Illinois under the assumed name DVDXpress since May 25, 2016.

## Jurisdiction and Venue

8.     Subject matter jurisdiction is proper under 28 U.S.C. §§ 1331 and 1367 because this Court has original jurisdiction over Redbox's causes of action for trademark infringement, trade dress infringement, and false advertising under the Lanham Act, 15 U.S.C. §§ 1051–1129. *See* 15 U.S.C. § 1121; 28 U.S.C. § 1331; 28 U.S.C. § 1338.   This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over Redbox's other causes of action arising under state law.

9.     This Court has personal jurisdiction over Defendant because it regularly and deliberately engages in the sales of goods and/or services in the State of Illinois and in this judicial district, which activities result in infringement of registered U.S. trademarks and trade dress owned by Redbox.   Further, personal jurisdiction is proper under 735 ILCS 5/2-209(a)(1), 2-209(a)(2), 2-209(a)(7), 2-209(b)(2), 2-209(b)(4), and 2-209(c) because Redbox's causes of action arise from the transaction of business in Illinois and the commission of tortious acts in Illinois.

---

Holdings LLC filed articles of dissolution.  Upon information and belief, the two members of HLTW Holdings LLC were Automated Retail Holdings LLC ("Automated Retail") and Tribeca Capital Partners LLC ("Tribeca").  Automated Retail Holdings LLC is a Florida limited liability company with its principal place of business at 7750 Okeechobee Boulevard, Suite 4-425, West Palm Beach, Florida 33411 and Tribeca Capital LLC is a Florida limited liability company with its principal place of business at 455 Australian Avenue, Suite 4h, Palm Beach, Florida 33480. Based upon what is known to date, Plaintiff is unable to it to determine whether HLTW Holdings, Automated Retail and/or Tribeca are currently associated with Xpress Retail LLC and/or the business operated under the name DVDXpress.  Discovery may reveal such an association, and if so, Plaintiff would seek to  add these entities as defendants if appropriate.

4

10.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Redbox's causes of action against Defendant occurred in this judicial district.

## THE DVD RENTAL INDUSTRY

11.     After the initial theatrical release of a movie, the major film studios generally make their movies available for home entertainment viewing on DVD.  A recently released DVD is known as a "new-release DVD."  The day on which a new-release DVD is first made available to the public is known as its "street date."

12.     By industry convention, nearly every new-release DVD has a street date falling on a Tuesday.  Consumer demand for a new-release DVD is generally the highest during the weekend immediately after its street date and declines thereafter.  Consumer demand for a new-release DVD declines rapidly during the first month of release, with most rental transactions of a DVD title's life occurring in the first four weeks of availability of a new-release DVD.

13.     Contrary to popular conceptions, there are relatively few major new-release DVDs made available in a given month.  Street dates for new-release DVDs are generally staggered so that a particular new-release DVD title will face as little competition as possible on the day of its release from other new-release DVDs in the same genre.

14.     Film studios generally enforce the street dates for their new-release DVDs by requiring distributors to sign contracts agreeing not to rent or sell a new-release DVD before its street date.  While some distributors (such as Redbox) enter into agreements with certain film studios agreeing to delay offering certain new-release DVDs for a limited period of time after their street dates, distributors are generally not allowed to offer new-release DVDs before their street date.  Nothing prevents a distributor from offering a new-release DVD on its street date absent such an agreement.

5

## REDBOX

15.     Redbox provides DVD rentals, including rentals of new-release DVDs, to consumers through a nationwide network of over 40,000 self-service kiosks.  Redbox kiosks are located in retail outlets such as the nation's largest mass merchant stores and drugstores, grocery stores, convenience stores, quick-service restaurants, and Navy and Marine bases.  Redbox kiosks can be found throughout the United States and Puerto Rico.

16.     Each Redbox kiosk features an interactive touchscreen and sign, a robotic disk array system, and a web-linked electronic communications system that allows customers to rent DVDs from the kiosk.  Redbox kiosks typically hold up to 700 DVDs, comprising anywhere from 70 to 200 individual movie titles.  The Redbox kiosks are updated weekly with a supply of new-release DVDs.

17.     Consumers can search for titles on the interactive touchscreen interface of the Redbox kiosk.  They can also search for movie titles and reserve DVDs online through Redbox's website and mobile applications.

18.     Redbox has provided DVD rentals through its kiosks since at least 2003.  Each Redbox kiosk prominently features the mark REDBOX and is branded using Redbox's distinctive red coloring over the majority of the face and sides of the kiosk.  This distinctive red coloring is also prominently featured on the packaging of Redbox's DVDs.  Examples of Redbox's use of its distinctive red coloring are shown below:

CHICAGO/#3018086



19.     This red coloration is particularly valuable to Redbox, as it enables customers to quickly and easily identify a Redbox kiosk.  Because customers are not required to return DVDs to the same kiosk as the DVDs were rented from, it is beneficial for customers to be able to easily identify a Redbox kiosk that they have not previously visited.

20.     Approximately 58 percent of all Redbox kiosks are located outdoors.  The distinctive red coloration used on the Redbox kiosks enables customers to quickly and easily identify a Redbox kiosk from a distance or while driving past.

21.     Redbox owns multiple U.S. trademark registrations for its mark REDBOX (the "Redbox Word Registrations") and its distinctive red trademark (the "Redbox Color Registrations").

22.     Redbox owns U.S. Registration No. 2,919,854 on the Principal Register for the mark REDBOX for use with vending machines (the "'854 Registration").  The application that resulted in the '854 Registration was filed on January 8, 2003 and was registered on January 18, 2005.  The '854 Registration has been renewed and is incontestable.  A copy of the registration certificate for the '854 Registration is provided as Exhibit A.

7

23.    Redbox owns U.S. Registration No. 2,988,869 on the Principal Register for the mark REDBOX for use with automated DVD rental services (the "'869 Registration"). The application that resulted in the '869 Registration was filed on January 8, 2003 and was registered on August 30, 2005. The '869 Registration has been renewed and is incontestable. A copy of the registration certificate for the '869 Registration is provided as Exhibit B.

24.    Redbox owns U.S. Registration No. 3,082,012 on the Principal Register for the mark REDBOX for use with vending services, namely, providing retail facilities featuring automated DVD rental (the "'012 Registration"). The application that resulted in the '012 Registration was filed on November 10, 2004 and was registered on April 18, 2006. The '012 Registration has been renewed and is incontestable. A copy of the registration certificate for the '012 Registration is provided as Exhibit C.

25.    Redbox owns U.S. Registration No. 3,438,474 on the Supplemental Register for the color red used over substantially all of the surface of the vending machines for use with vending machines (the "'474 Registration"). The application that resulted in the '474 Registration was filed on January 3, 2007 and was registered on May 27, 2008. The '474 Registration has been renewed. A copy of the registration certificate for the '474 Registration is provided as Exhibit D.

26.    Redbox owns U.S. Registration No. 3,438,623 on the Supplemental Register for the color red used over substantially all of the surface of the vending machines used in rendering vending services in the field of DVDs and automated DVD rental services (the "'623 Registration"). The application that resulted in the '623 Registration was filed on January 3, 2007 and was registered on May 27, 2008. The '623 Registration has been renewed. A copy of the registration certificate for the '623 Registration is provided as Exhibit E.

CHICAGO/#3018086

27.     The trademark for the Redbox Color Registrations is provided below (the "Redbox Red Mark"):



28.     Redbox has used the Redbox Red Mark in commerce since at least July 31, 2002. The Redbox Red Mark is inherently distinctive, and over the last 15 years, customers have come to associate the Redbox Red Mark as indicating that Redbox is the leading source of DVD vending and rental services.

29.     In addition to owning the Redbox Word Registrations and the Redbox Color Registrations, Redbox has acquired trade dress in the unique, nonfunctional, and distinctive appearance of its vending machines, which customers have come to recognize and associate with identifying Redbox as the source of Redbox's goods and services.  In particular, Redbox has acquired trade dress rights based on its use of the color red over substantially all of the external surface of its DVD vending machines for well over a decade (the "Redbox Trade Dress").  The Redbox kiosks are boxy, rectangular vending machines that are approximately 66 inches tall by 32 inches wide and 26 inches deep with an exterior surface that is substantially red in color that dispenses and receives DVDs containing packaging with substantially the same shade of red as the vending machine.

9

## DVDXPRESS

30.     Upon information and belief, DVDXpress operates kiosks in approximately 32 states within the United States, including in the State of Illinois and this judicial district. DVDXpress kiosks are located at hundreds of retail outlets such as supermarkets and convenience stores.

31.     Like the Redbox kiosk, the DVDXpress kiosks have an interactive, 17-inch touch screen, which customers use to search for and locate movie titles to rent from the kiosk. Upon information and belief, over 90 percent of DVDXpress rentals are initiated through a DVDXpress kiosk. Customers must visit a DVDXpress kiosk to obtain and return DVDs.

32.     A previous generation of DVDXpress kiosks bore little resemblance to Redbox kiosks (the "Old DVDXpress Kiosks"). The Old DVDXpress Kiosks included a predominantly grey front panel, as shown below:

10



33. However, DVDXpress recently began using new or rebranded kiosks that are entirely red in color, other than signage (the "New DVDXpress Kiosks"). The following image is of a New DVDXpress Kiosk in Streator, Illinois:

11



34.     The New DVDXpress Kiosks are visually distinct from the Old DVDXpress Kiosks.  In fact, DVDXpress states in the "Frequently Asked Questions" page of its consumer-facing website that: "[t]he [newer] machines look different enough [from the older machines] that you shouldn't mistake one for another."[3]

35.     The New DVDXpress Kiosks are confusingly similar to the Redbox Red Mark in that substantially all of the vending machine is red in color.  Further, the New DVDXpress Kiosks are confusingly similar to the Redbox Trade Dress embodied in Redbox's kiosks in many material respects, including their red coloration and similar "boxy" design with an indentation where a sloped, 17-inch interactive touch screen is located.  The New DVDXpress Kiosks are the same depth and width (26 inches by 32 inches) as Redbox kiosks, but are about six inches taller.

---

[3] https://www.mydvdxpress.net/faqs

CHICAGO/#3018086

The New DVDXpress Kiosks have an indented, sloped 17-inch touch screen. Upon information and belief, the dimensions of the New DVDXpress Kiosks are markedly different from those of the Old DVDXpress Kiosks. Upon information and belief, the Old DVDXpress Kiosks were 42 inches wide, 30 inches deep, and 72 inches high.

36. Upon information and belief, Redbox customers have mistaken the New DVDXpress Kiosks for Redbox kiosks and returned or attempted to return Redbox DVDs to the New DVDXpress Kiosks under the belief that the New DVDXpress Kiosks were owned by Redbox.

37. The image below depicts signage on a New DVDXpress Kiosk warning customers to not return Redbox DVDs using the New DVDXpress Kiosk:



38. Upon information and belief, DVDXpress began to post these warning labels at least in part because customers were actually confused and had returned or attempted to return Redbox DVDs to the New DVDXpress Kiosks.

13

39.     Upon information and belief, around the same time that DVDXpress began introducing the New DVDXpress Kiosks, DVDXpress also introduced new packaging for the DVDs dispensed from the New DVDXpress Kiosks.  As explained on DVDXpress's website, the New DVDXpress Kiosks dispense DVDs in a slim jewel case which is not interchangeable with the DVD case dispensed by the Old DVDXpress Kiosks.  In other words, a DVD dispensed from a New DVDXpress Kiosk cannot be returned to an Old DVDXpress Kiosk, and vice versa.

40.     The new jewel case used with the New DVDXpress Kiosks is identical in size and shape to that used by Redbox.  The new jewel case features a prominent red panel across the front of the jewel case, as shown below:



41.     Upon information and belief, a substantial number of the New DVDXpress Kiosks are located outside.  A customer seeing a New DVDXpress Kiosk from a distance or while driving is likely to mistake the New DVDXpress Kiosk for a Redbox Kiosk based on the red coloring used on the New DVDXpress Kiosks.

## DVDXPRESS FALSE ADVERTISING STATEMENTS

42.     DVDXpress's kiosks, DVD packaging, in-store posters, Twitter page, and website all prominently feature the unqualified statement "**RENT IT HERE FIRST 28 DAYS BEFORE NETFLIX & REDBOX**."  Upon information and belief, DVDXpress has provided to

14

various retail locations the following displays, all containing the wording "**Rent it Here First –**
**28 Days Before Netflix & Redbox**":  24" x 36" outdoor banners, 24" x 36" window signs, and
24" x 36" floor decals.  Examples of this claim emblazoned on signage on DVDXpress kiosks is
provided below:





43. An example of a poster hanging in a grocery store location in Yuba City, California on or about June 22, 2017 is provided below:



44.     The DVDXpress kiosk in Fox River Grove, Illinois features the same signage containing the same statement, "**RENT IT HERE FIRST 28 DAYS BEFORE NETFLIX & REDBOX**," as depicted in Paragraph 42 above.  As shown in the photographs below taken of DVDs rented from that kiosk on July 29, 2017, DVDXpress advertised on the packaging for the following new release movie titles that they were available through DVDXpress "28 days before" they were available through Redbox.  Each of these advertisements is false and deceptive:

(a)     "Arrival."  "Arrival" was an Academy Award nominee for Best Picture, and stars Academy Award nominees Amy Adams and Jeremy Renner.  The street date for this movie title was February 14, 2017.  Upon information and belief, DVDXpress offered DVDs of this title available for rental no earlier than February 14, 2017.  Redbox had this title available for rental on February 14, 2017.  Unless DVDXpress broke street date, DVDXpress could not have had this movie first available for rental by consumers earlier than Redbox, much less 28 days before Redbox.

17

 

(b)     "Ghost in the Shell." "Ghost in the Shell" stars Scarlett Johansson.  The street date for this movie title was July 25, 2017.  Upon information and belief, DVDXpress offered DVDs of this title available for rental no earlier than July 25, 2017.  Redbox had this title available for rental on July 25, 2017.  Unless DVDXpress broke street date, DVDXpress could not have had this movie first available for rental by consumers earlier than Redbox, much less 28 days before Redbox.

 

18

(c)  "John Wick: Chapter 2." "John Wick: Chapter 2" is an action thriller starring Keanu Reeves. The street date for this movie title was June 13, 2017. Upon information and belief, DVDXpress offered DVDs of this title available for rental no earlier than June 13, 2017. Redbox had this title available for rental on June 13, 2017. Unless DVDXpress broke street date, DVDXpress could not have had this movie first available for rental by consumers earlier than Redbox, much less 28 days before Redbox.

 

(d)  "Kong: Skull Island." This movie title was distributed by Warner Bros. The street date for this movie title was July 18, 2017. Upon information and belief, DVDXpress offered DVDs of this title available for rental no earlier than July 18, 2017. Redbox offered "Kong: Skull Island" for rental from its kiosks within less than 28 days of its street date. Unless DVDXpress broke street date, DVDXpress could not have had this movie first available for rental by consumers 28 days before Redbox.

19

 

        (e)     "La La Land." "La La Land" was nominated for Academy Awards in 13 categories, and won 6. The street date for this movie title was April 25, 2017. Upon information and belief, DVDXpress offered DVDs of this title available for rental no earlier than April 25, 2017. Redbox offered "La La Land" for rental on April 25, 2017. Unless DVDXpress broke street date, DVDXpress could not have had this movie first available for rental by consumers earlier than Redbox, much less 28 days before Redbox.

 

(f)     "Lion." "Lion" was an Academy Award Best Picture nominee.  The street date for this movie title was April 11, 2017.  Upon information and belief, DVDXpress offered DVDs of this title available for rental no earlier than April 11, 2017.  Redbox offered "Lion" for rental on April 11, 2017.  Unless DVDXpress broke street date, DVDXpress could not have had this movie first available for rental by consumers earlier than Redbox, much less 28 days before Redbox.

 

21

(g) "Moana." "Moana" is a Disney animated adventure film featuring the voice of Dwayne Johnson. The movie was nominated for two Academy Awards, including for Animated Feature Film. The street date for this movie title was March 7, 2017. Redbox generally offered "Moana" for rental from its kiosks less than 28 days of its street date. Upon information and belief, DVDXpress did not offer "Moana" for rental to its customers at all of its kiosks on its street date. Unless DVDXpress broke street date, DVDXpress could not have had this movie first available for rental by consumers 28 days before Redbox.



(h) "Storks." "Storks" is a family-friendly, animated movie. It was distributed by Warner Bros. The street date for this movie title was December 20, 2016. Upon information and belief, DVDXpress offered DVDs of this title available for rental no earlier than December 20, 2016. Redbox had this title available for rental within less than 28 days of its street date. Unless DVDXpress broke street date, DVDXpress could not have had this movie first available for rental by consumers 28 days before Redbox.

22



(i)     "Suicide Squad." "Suicide Squad" is an action-fantasy movie starring Academy Award nominee Will Smith and Academy Award winners Viola Davis and Jared Leto. The movie was distributed by Warner Bros.  The street date for this movie title was December 13, 2016.  Upon information and belief, DVDXpress offered DVDs of this title available for rental no earlier than December 13, 2016.  Redbox had this title available for rental within less than 28 days of its street date.  Unless DVDXpress broke street date, DVDXpress could not have had this movie first available for rental by consumers 28 days before Redbox.



(j)　　"Sully." "Sully" is a real-life drama telling the story of the landing of a crippled jetliner on the Hudson River. "Sully" stars Academy Award winner Tom Hanks and was directed by Academy Award winner Clint Eastwood. "Sully" was distributed by Warner Bros. The street date for this movie title was December 20, 2016. Upon information and belief, DVDXpress offered DVDs of this title available for rental no earlier than December 20, 2016. Redbox had this title available for rental within less than 28 days of its street date. Unless DVDXpress broke street date, DVDXpress could not have had this movie first available for rental by consumers 28 days before Redbox.

24

 

(k)     "The Great Wall." "The Great Wall" is a war-fantasy epic.   It stars Academy Award winner Matt Damon.  This title was distributed by Universal Pictures Home Entertainment.  The street date for this movie title was May 23, 2017.  Upon information and belief, DVDXpress offered DVDs of this title available for rental no earlier than May 23, 2017.  Redbox had this title available for rental by May 23, 2017.  Unless DVDXpress broke street date, DVDXpress could not have had this movie first available for rental by consumers earlier than Redbox, much less 28 days before Redbox.

 

25

(l)    "The Zookeeper's Wife." "The Zookeeper's Wife" stars Academy Award nominee Jessica Chastain.    The movie was distributed by Universal Pictures Home Entertainment.   The street date for this movie title was July 4, 2017.   Upon information and belief, DVDXpress offered DVDs of this title available for rental no earlier than July 4, 2017. Redbox had this title available for rental on July 4, 2017.  Unless DVDXpress broke street date, DVDXpress could not have had this movie first available for rental by consumers earlier than Redbox, much less 28 days before Redbox.

 

45.    The DVDXpress kiosk in Lake Zurich, Illinois features the same signage containing the same statement, "**RENT IT HERE FIRST 28 DAYS BEFORE NETFLIX & REDBOX**," as depicted in Paragraph 42 above.   As shown in the photographs below taken of DVDs rented from that kiosk on July 29, 2017, DVDXpress advertised on the packaging for the following new release movie titles that they were available through DVDXpress "28 days before" they were available through Redbox.   Each of these advertisements is false and deceptive:

(a)    "Allied." "Allied" stars Academy Award Winners Brad Pitt and Marion Cotillard.   The street date for this movie title was February 28, 2017.   Upon information and

belief, DVDXpress offered DVDs of this title available for rental no earlier than February 28, 2017. Redbox had this title available for rental on February 28, 2017. Unless DVDXpress broke street date, DVDXpress could not have had this movie first available for rental by consumers earlier than Redbox, much less 28 days before Redbox.

 

(b) "Fences." "Fences" is an Academy Award-nominated Best Picture. It stars Academy Award winners Denzel Washington and Viola Davis. The street date for this movie title was March 14, 2017. Upon information and belief, DVDXpress offered DVDs of this title available for rental no earlier than March 14, 2017. Redbox had this title available for rental on March 14, 2017. Unless DVDXpress broke street date, DVDXpress could not have had this movie first available for rental by consumers earlier than Redbox, much less 28 days before Redbox.

27

 

(c)     "Gold." "Gold" stars Academy Award winner Matthew McConaughey. The street date for this movie title was May 2, 2017.  Upon information and belief, DVDXpress offered DVDs of this title available for rental no earlier than May 2, 2017.  Redbox had this title available for rental on May 2, 2017.  Unless DVDXpress broke street date, DVDXpress could not have had this movie first available for rental by consumers earlier than Redbox, much less 28 days before Redbox.

 

(d)     "Hacksaw Ridge." "Hacksaw Ridge" was nominated for Academy Awards in six categories, and won two.  The street date for this movie title was February 21, 2017.  Upon information and belief, DVDXpress offered DVDs of this title available for rental

28

no earlier than February 21, 2017. Redbox had this title available for rental on February 21, 2017. Unless DVDXpress broke street date, DVDXpress could not have had this movie first available for rental by consumers earlier than Redbox, much less 28 days before Redbox.

 

(e)     "Monster Trucks." "Monster Trucks" is a family-friendly action adventure movie. The street date for this movie title was April 11, 2017. Upon information and belief, DVDXpress offered DVDs of this title available for rental no earlier than April 11, 2017. Redbox had this title available for rental on April 11, 2017. Unless DVDXpress broke street date, DVDXpress could not have had this movie first available for rental by consumers earlier than Redbox, much less 28 days before Redbox.



(f)  "Passengers."  "Passengers" stars Academy Award winner Jennifer Lawrence and Chris Pratt.  The street date for this movie title was March 14, 2017.  Upon information and belief, DVDXpress offered DVDs of this title available for rental no earlier than March 14, 2017.  Redbox had this title available for rental on March 14, 2017.  Unless DVDXpress broke street date, DVDXpress could not have had this movie first available for rental by consumers earlier than Redbox, much less 28 days before Redbox.



(g)  "Rock Dog."  "Rock Dog" is an animated, family film featuring the voice of Luke Wilson.  The street date for this movie title was May 23, 2017.  Upon information and

30

belief, DVDXpress offered DVDs of this title available for rental no earlier than May 23, 2017. Redbox had this title available for rental on May 23, 2017. Unless DVDXpress broke street date, DVDXpress could not have had this movie first available for rental by consumers earlier than Redbox, much less 28 days before Redbox.

 

(h)     "The Shack." "The Shack" is an inspirational drama starring Sam Worthington and Academy Award winner Octavia Spencer. The street date for this movie title was May 30, 2017. Upon information and belief, DVDXpress offered DVDs of this title available for rental no earlier than May 30, 2017. Redbox had this title available for rental on May 30, 2017. Unless DVDXpress broke street date, DVDXpress could not have had this movie first available for rental by consumers earlier than Redbox, much less 28 days before Redbox.

 

31

(i)       "xXx: Return of Xander Cage." This movie is an action-adventure film starring Vin Diesel and Academy Award nominee Samuel L. Jackson.  The street date for this movie title was May 16, 2017.  Upon information and belief, DVDXpress offered DVDs of this title available for rental no earlier than May 16, 2017.  Redbox had this title available for rental on May 16, 2017.  Unless DVDXpress broke street date, DVDXpress could not have had this movie first available for rental by consumers earlier than Redbox, much less 28 days before Redbox.

 

46.       As shown in the photograph below taken of DVDs rented from a DVDXpress kiosk in Streator, Illinois on or about June 27, 2017, DVDXpress advertised on the packaging for the then newly released movie "The Founder" that this movie was available through DVDXpress "28 days before" it was available through Redbox.  "The Founder" stars Academy Award winner Michael Keaton as McDonald's founder, Ray Kroc.  The street date for this movie title was April 18, 2017.  Upon information and belief, DVDXpress offered DVDs of this title available for rental no earlier than April 18, 2017.  Redbox had this title available for rental on April 18, 2017.  Unless DVDXpress broke street date, DVDXpress could not have had this movie first available for rental by consumers earlier than Redbox, much less 28 days before Redbox.  As such,

CHICAGO/#3018086

DVDXpress's advertisement indicating that consumers could rent this movie through DVDXpress "28 days before" it was available through Redbox was false and deceptive.

 

47. The jewel case packaging depicted in the photos in Paragraphs 44–46 are representative of packaging used by DVDXpress to contain and deliver to consumers all DVDs from all of its New DVDXpress Kiosks.

48. Beyond the examples described above, DVDXpress has engaged in many additional instances of false and deceptive advertising. The following are additional examples, and are not intended to circumscribe the full scope of DVDXpress's deception on these or other movies offered for rent at DVDXpress and Redbox.

49. DVDXpress advertised on the packaging for the following new-release movies that they were available through DVDXpress "28 days before" they were available through Redbox:

(a) "Arrival" at DVDXpress kiosks located in Covina and Santa Maria, California ; Lewes, Millville and Rehoboth Beach, Delaware ; Boise, Idaho ; Lebanon, Indiana; Reno, Nevada; Patchogue, New York; Jackson and Kenton, Ohio; Hamlin, Pennsylvania ; West Valley, Utah ; and Bothell and Edmonds, Washington.

33

(b) "Doctor Strange" at DVDXpress kiosks located in Los Angeles, California; Caldwell, Idaho; Severna Park, Maryland; Franklin Square, Holbrook, South Setauket and Springfield Gardens, New York; Arlington, Duncanville, Hurst and North Richland Hills, Texas; and Kenmore, Lynnwood, Shoreline and Yakima, Washington. "Doctor Strange" is a Marvel film starring Academy Award nominee Benedict Cumberbatch and Academy Award winner Tilda Swinton. The street date for this movie title was February 28, 2017. Redbox generally offered "Doctor Strange" for rental from its kiosks within less than 28 days of its street date. Upon information and belief, DVDXpress did not offer "Doctor Strange" for rental to its customers at all of its kiosks on its street date. Unless DVDXpress broke street date, DVDXpress could not have had this movie first available for rental by consumers 28 days before Redbox. The following photos were taken at a DVDXpress kiosk in Caldwell, Idaho on or about June 29, 2017.

 

(c) "Fences" at DVDXpress kiosks located in Lompoc, California; Meridian, Idaho; Reno, Nevada; Hawley and Scranton, Pennsylvania; and Midvale, Utah.

34

(d)     "Hacksaw Ridge" at DVDXpress kiosks located in North Pole, Alaska; Los Angeles, California; Boise, Idaho; Odenton, Maryland; St. Clair Shores, Michigan; Boulder City, Henderson and Las Vegas, Nevada; Springfield, Virginia; and Seattle, Washington.

(e)     "La La Land" at DVDXpress kiosks located in Carrs and Fairbanks, Alaska; Buellton, El Cajon, Los Angeles, San Juan Capistrano, San Marcos, Saugus and Yuba City, California; Nampa, Idaho; Marion and Richmond, Indiana, Pittsburg, Kansas; Coon Rapids, Minnesota; Commack, New York; Cincinnati and Eaton, Ohio; Allentown and Indiana, Pennsylvania; Flower Mound, Frisco, Lewisville and Southlake, Texas; Orem, Utah; and Bonney Lake, Everett, Kirkland, Orting and Richland, Washington.

(f)     "Lion" at DVDXpress kiosks located in Bakersfield, California; and Sidney, Ohio.

(g)     "Manchester by the Sea" at DVDXpress kiosks located in Newton, Kansas; and Bellefontaine, Ohio. "Manchester by the Sea" was nominated for Academy Awards in six categories, and won three. The street date for this movie title was February 21, 2017. Upon information and belief, DVDXpress offered DVDs of this title available for rental no earlier than February 21, 2017. Redbox had this title available for rental on February 21, 2017. Unless DVDXpress broke street date, DVDXpress could not have had this movie first available for rental by consumers earlier than Redbox, much less 28 days before Redbox. The following photos were taken at a DVDXpress kiosk in Bellefontaine, Ohio on or about June 29, 2017.

35



(h) "Moana" at DVDXpress kiosks located in Bakersfield and San Diego, California; Muncie, Indiana; Bethesda, Maryland; Howell, New Jersey; Allentown, Pennsylvania; Carrollton, Dallas, Flower Mound, Frisco, Garland, Plano and Richardson, Texas; and Enumclaw, Puyallup, Renton and Spokane, Washington.

(i) "The Founder" at DVDXpress kiosks in Anchorage and North Pole, Alaska; San Diego, California; Morton, Illinois; Coos Bay and Lake Oswego, Oregon; Lewisburg, Pennsylvania; Alexandria, Virginia; and Kennewick, Spokane, and Yakima, Washington.

## OTHER EXAMPLES OF FALSE ADVERTISING AT DVDXPRESS KIOSKS

50. The interactive touch screen at the DVDXpress kiosk in Lake Zurich, Illinois displayed the following image and "Description" (comprising a "title page") with respect to "Suicide Squad" on or about July 29, 2017. The "Description" on the title page states, in part, that "Suicide Squad" was available 28 days before Redbox. This statement is inaccurate. Upon information and belief, this title page was available for display to consumers at all of DVDXpress's kiosks on or about July 29, 2017. Upon information and belief, this same title page has been available for display to consumers at all of DVDXpress's kiosks since at least

CHICAGO/#3018086

December 13, 2016.  Upon information and belief, thousands of consumers have visited this title

page on DVDXpress's kiosks to engage in rental activity since December 13, 2016.



51.    The interactive touch screen at the DVDXpress kiosk in Lake Zurich, Illinois

displayed the following title page with respect to "Storks" on or about July 29, 2017.  The

"Description" on the title page states, in part, that "Storks" was available 28 days before Redbox.

This statement is inaccurate.  Upon information and belief, this title page was available for

display to consumers at all of DVDXpress's kiosks on July 29, 2017.  Upon information and

belief, this same title page has been available for display to consumers at all of DVDXpress's

kiosks since at least December 20, 2016.  Upon information and belief, thousands of consumers

have visited this title page on DVDXpress's kiosks to engage in rental activity since December

20, 2016.



52.     The interactive touch screen at the DVDXpress kiosk in Lake Zurich, Illinois displayed the following title page with respect to "Sully" on or about July 29, 2017.  The "Description" on the title page states, in part, that "Sully" was available 28 days before Redbox.  This statement is inaccurate.  Upon information and belief, this title page was available for display to consumers at all of DVDXpress's kiosks on July 29, 2017.  Upon information and belief, this same title page has been available for display to consumers at all of DVDXpress's kiosks since at least December 20, 2016.  Upon information and belief, thousands of consumers have visited this title page on DVDXpress's kiosks to engage in rental activity since December 20, 2016.

CHICAGO/#3018086



53.     The interactive touch screen at the DVDXpress kiosks in Fox River Grove and Lake Zurich, Illinois displayed the following title page with respect to "The Great Wall" on or about July 29, 2017.  The "Description" on the title page states, in part, that "The Great Wall" was available 28 days before Redbox.  This statement is inaccurate.  Upon information and belief, the title page was available for display to consumers at all of DVDXpress's kiosks on July 29, 2017.  Upon information and belief, this same title page has been available for display to consumers at all of DVDXpress's kiosks since at least May 23, 2017.  Upon information and belief, thousands of consumers have visited this title page on DVDXpress's kiosks to engage in rental activity since May 23, 2017.

CHICAGO/#3018086



**EXAMPLES OF FALSE ADVERTISING THROUGH SOCIAL MEDIA**

54.     On or about December 13, 2016, DVDXpress tweeted to consumers that it would have "Suicide Squad" available 28 days before Redbox. This statement was inaccurate.

55.     On or about December 20, 2016, DVDXpress tweeted to consumers that it would have "Storks" available 28 days before Redbox. This statement was inaccurate.

56.     On or about December 20, 2016, DVDXpress tweeted to consumers that it would have "Sully" available 28 days before Redbox. This statement was inaccurate.

57.     On or about May 23, 2017, DVDXpress tweeted to consumers that it would have the new-release title "The Great Wall" available 28 days before Redbox. This statement was inaccurate.

58.     As show in the screenshot below, on or about May 30, 2017, DVDXpress posted on its Facebook page that DVDXpress would have the new-release title "Fist Fight" available 28 days before Redbox. This title was distributed by Warner Bros. The street date for this movie title was May 30, 2017. Upon information and belief, DVDXpress offered DVDs of this title

40

available for rental no earlier than May 30, 2017. Redbox had this title available for rental within less than 28 days of its street date. Unless DVDXpress broke street date, DVDXpress could not have had this movie first available for rental by consumers 28 days before Redbox.



## EXAMPLES OF FALSE ADVERTISING ON THE DVDXPRESS WEBSITE

59.    As shown in the screenshot below, on or about July 30, 2017, DVDXpress had a page on its website, https://www.mydvdxpress.net/Index/detail/5119, indicating that "Fist Fight" was available 28 days before Redbox. This statement is inaccurate. Upon information and belief, this same page, listing "Fist Fight" as available 28 days before Redbox, has been available on the DVDXpress website since at least May 30, 2017.



60.     As shown in the screenshot below, on or about July 30, 2017, DVDXpress had a page on its website, https://www.mydvdxpress.net/Index/detail/5147, indicating that the new-release title "The Zookeeper's Wife" was available before Redbox.  This statement is inaccurate. Upon information and belief, this same page, listing "The Zookeeper's Wife" as available before Redbox, has been available on the DVDXpress website since at least July 4, 2017.



CHICAGO/#3018086

61.     As shown in the screenshot below, on or about July 30, 2017, DVDXpress had a banner ad on its website, https://www.mydvdxpress.net, announcing that the new-release title "Kong: Skull Island" is available 28 days before Redbox.  This statement is inaccurate.  Upon information and belief, this same page, listing "Kong: Skull Island" as available 28 days before Redbox, has been available on the DVDXpress website since at least July 4, 2017.



62.     On or about July 30, 2017, DVDXpress had a banner ad on its website, https://www.mydvdxpress.net, announcing that the family-friendly animated new-release title "The Boss Baby" is available 28 days before Redbox.  This title is distributed by Fox.  The street date for this movie title was July 25, 2017.  Upon information and belief, DVDXpress offered DVDs of this title available for rental no earlier than July 25, 2017.  Unless DVDXpress broke street date, the earliest day that DVDXpress could have this title available for rental was July 25, 2017.  Redbox is scheduled to have this title available for rental on August 1, 2017.  Unless DVDXpress broke street date, DVDXpress will not have this movie first available for rental by consumers 28 days before Redbox.  Upon information and belief, this same page, listing "The

CHICAGO/#3018086

Boss Baby" as available 28 days before Redbox, has been available on the DVDXpress website since at least July 25, 2017.



63.     A review of other pages on the DVDXpress website reveals a number of additional false statements.  The movie titles identified in (a) and (b) below were available to rent at DVDXpress's Fox River Grove and Lake Zurich, Illinois locations on July 30, 2017.

(a)     With respect to each of the movie titles below, DVDXpress advertised on the respective website title page that the title was available at its kiosks 28 days before they were available at Redbox.  In fact, all of these titles were available for rental at Redbox kiosks either on their street dates or in less than 28 days after their respective street dates.  Upon information and belief, with respect to each of the identified website title pages, DVDXpress has advertised the same description regarding availability 28 days before Redbox since at least the street date for the particular title.

| Movie Title | DVDXpress Website Title Page |
| --- | --- |
| Eye in the Sky | https://www.mydvdxpress.net/index/detail/4783/4784 |
| The Purge: Election Year | https://www.mydvdxpress.net/Index/detail/4875 |
| Ratchet & Clank | https://www.mydvdxpress.net/index/detail/4833/4834 |

| | |
|---|---|
| Kung Fu Panda 3 | https://www.mydvdxpress.net/index/detail/4779/4780 |
| Search Party | https://www.mydvdxpress.net/index/detail/4794/ |
| Fifty Shades of Black | https://www.mydvdxpress.net/index/detail/4719/ |
| Mother's Day | https://www.mydvdxpress.net/index/detail/4813/ |
| Woodlawn | https://www.mydvdxpress.net/index/detail/4633/ |

(b)     With respect to each of the movie titles below, DVDXpress advertised on the respective website title page that the title was available at its kiosks before they were available at Redbox.  In fact, all of these titles were available for rental at Redbox kiosks on their street dates.  Upon information and belief, with respect to each of the identified website title pages, DVDXpress has advertised the same description regarding availability before Redbox since at least the street date for the particular title.

| **Movie Title** | **DVDXpress Website Title Page** |
|---|---|
| Lost City of Z | https://www.mydvdxpress.net/Index/detail/5156 |
| Popstar | https://www.mydvdxpress.net/Index/detail/4857 |
| Term Life | https://www.mydvdxpress.net/index/detail/4790/ |
| Kindergarten Cop 2 | https://www.mydvdxpress.net/index/detail/4745/ |

### DVDXPRESS COULD NOT HAVE ENDEAVORED TO SUBSTANTIATE ITS ADVERTISING CLAIMS

64.     Upon information and belief, DVDXpress knew or should have known that its claims that the particular movie titles identified in this Complaint were available through DVDXpress before they were available through Redbox were inaccurate.  Anyone can easily ascertain whether Redbox is offering a particular movie for rent by checking Redbox's website, www.redbox.com, its free mobile applications, or any of its more than 40,000 kiosks throughout the United States.  Redbox lists new releases and top movie rentals at http://about.redbox.com.

CHICAGO/#3018086

A leading trade journal for the home entertainment industry, *Home Media Magazine*,[4] also lists the top 20 rentals each week, based on information it sources from Redbox. Certain news sources, like the *Chicago Tribune*[5] and the *StarTribune*,[6] also list Redbox's top movie rentals each week.

65.     Upon information and belief, DVDXpress did not research via any of the sources mentioned in the preceding paragraph whether its statements were true with respect to any of the particular movie titles identified in this Complaint.

66.     Upon information and belief, during 2016, DVDXpress did not research whether there was substantiation to make a claim that consumers could "**RENT IT HERE FIRST 28 DAYS BEFORE NETFLIX & REDBOX**."

67.     Upon information and belief, during 2017, DVDXpress did not research whether there was substantiation to make a claim that consumers could "**RENT IT HERE FIRST 28 DAYS BEFORE NETFLIX & REDBOX**."

68.     On April 10, 2017, counsel for Redbox sent DVDXpress a letter demanding that DVDXpress immediately cease and desist its false and deceptive advertising. A copy of this letter is attached as <u>Exhibit F</u>. DVDXpress never responded to this letter, and its wrongful conduct continues unabated to this day.

69.     DVDXpress's willful efforts to trade on the substantial goodwill that Redbox has built up in the marketplace does not stop with its deliberate copying of the Redbox Red Mark and the Redbox Trade Dress. DVDXpress includes the mark REDBOX in the metadata for its

---

[4] http://www.homemediamagazine.com/top-renters/top-20-rentals-week-ended-072317
[5] http://www.chicagotribune.com/entertainment/sns-tns-bc-vid-redbox-20170726-story.html
[6] http://www.startribune.com/nielsen-ratings-for-july-17-23/436765893/

website, https://www.mydvdxpress.net/aboutdvdxpress, as a keyword.[7] An excerpt of the html

code for DVDXpress's website showing this usage is provided below:

```
<title>About Us :: DVDXpress :: Automated DVD Rental Kiosks :: DVDXpress</title>
    <meta name="keywords" content="dvdxpress, dvd express, redbox, dvd kiosk, dvd machine, bluray, video rental, video store,
blockbuster" />
    <meta name="description" content="DVDXpress is a leading owner and operator of automated DVD rental systems in the United
States. Since 2001, our focus has been on providing movie lovers with the most convenient and satisfying way to rent New
Release DVDs instantly via our DVD Rental Kiosks." />
```

70.     Upon information and belief, DVDXpress used Redbox's registered mark

REDBOX in the metadata for its website to capture search requests and to drive consumer traffic

to its website, at the expense of Redbox.

71.     Much of Redbox's success depends on maintaining a business model that satisfies

the expectations of consumers, its retail and government clientele, and its studio licensors. By

falsely telling consumers that a given title is not yet available at Redbox, DVDXpress intends to

decrease consumer satisfaction with and consumer demand for the Redbox service and drive

customers to use DVDXpress's service at Redbox's expense. As such, DVDXpress intends for

Redbox to lose consumers and transactions, especially with respect to popular movies. Indeed,

the 38 movies alone discussed in the preceding paragraphs represent a total of over $2.5 billion

in domestic box office sales.

## COUNT I

### (TRADEMARK INFRINGEMENT UNDER 15 U.S.C. § 1114(1))

72.     Plaintiff repeats and realleges Paragraphs 1–71 of this Complaint as and for this

Paragraph 72.

73.     Redbox's use of the color red over a substantial portion of its vending machines is

widely recognized and has become a valuable indicator of the source and origin of the DVDs and

DVD rental services provided by Redbox, which in turn drives Redbox's sales.

---

[7] The footer of this website contains the following copyright notice:  "© 2013 DVDXpress."

CHICAGO/#3018086

74.     Redbox owns U.S. Registration No. 3,438,474 and U.S. Registration No. 3,438,623 for the Redbox Red Mark.

75.     The Redbox Red Mark, as evidenced by the Redbox Color Registrations, is entitled to protection under the Lanham Act, 15 U.S.C. § 1114(1).  The Redbox Red Mark has a highly distinctive appearance that is nonfunctional.

76.     The Redbox Red Mark is inherently highly distinctive and/or has also acquired substantial widespread recognition and acquired distinctiveness or secondary meaning in the marketplace through Redbox's extensive and continuous use, advertising, promotion and rendering of services sales through vending machines employing the Redbox Red Mark for many years throughout the United States.  Through that extensive and continuous use, advertising, promotion and rendering of services, the Redbox Red Mark has become a well-known indicator of the origin and/or quality of Redbox's goods and services before Defendant's unauthorized use of the Redbox Red Mark.

77.     Upon information and belief, Defendant copied Redbox's distinctive stylistic choices when it modified the exterior of its vending machines to be substantially red in color (other than signage).

78.     Upon information and belief, Defendant's use of the Redbox Red Mark or colorable imitations thereof has been intentional and willful, as is evidenced at least by the high degree of similarity of the appearance of the New DVDXpress Kiosks and the Redbox Red Mark, as shown below:

**THE NEW DVDXPRESS KIOSK**          **THE REDBOX RED MARK**

      

79.     Upon information and belief, Defendant had actual knowledge of the Redbox Red Mark before it decided to begin using the New DVDXpress Kiosks in commerce.

80.     Defendant's use in commerce of the Redbox Red Mark, and/or confusingly similar designs, is likely to cause confusion or mistake, or to deceive as to the affiliation, connection or association of Defendant with Redbox, or the origin, sponsorship or approval of Redbox's products or commercial activities in violation of 15 U.S.C. § 1114(1).

81.     Upon information and belief, customers have actually been confused or deceived by the use of the Redbox Red Mark by Defendant and have attempted to return Redbox DVDs to Defendant's New DVDXpress Kiosks.

82.     Defendant's use described above constitutes infringement of Redbox's registered Redbox Red Mark in violation of 15 U.S.C. § 1114(1).  The foregoing acts of infringement have been and continue to be deliberate, and upon information and belief, have continued even after Defendant was aware of the Redbox's ownership of the Redbox Red Mark, and thus are willful and wanton, making this an exceptional case within the meaning of 15 U.S.C. § 1117.

CHICAGO/#3018086

83.     As a direct and proximate result of Defendant's violation of Redbox Red Mark, Redbox has suffered and continues to suffer damages to its profits, sales and business. Defendant and Plaintiff are direct competitors.  They compete in identical channels of trade for identical goods and services.  The trademark infringement complained of herein has caused and, unless restrained and enjoined, will cause irreparable harm, damage and injury to Redbox, for which Redbox has no adequate remedy at law.  The injury to Redbox is and continues to be ongoing and irreparable.

84.     As a direct and proximate result of Defendant's conduct, Redbox is entitled to injunctive relief under 15 U.S.C. § 1116, and Redbox is also entitled to recover Defendant's profits, Redbox's non-duplicative actual damages, and Redbox's costs and reasonable attorneys' fees.

## COUNT II

## (COMMON LAW TRADE DRESS INFRINGEMENT UNDER 15 U.S.C. § 1125(a))

85.     Plaintiff repeats and realleges Paragraphs 1–84 of this Complaint as and for this Paragraph 85.

86.     Redbox has used the Redbox Trade Dress in interstate commerce to identify itself as the source of its goods and services.

87.     Redbox's use of the Redbox Trade Dress is widely recognized and has become a valuable indicator of the source and origin of the DVDs and DVD rental services provided by Redbox, which in turn drives Redbox's sales.

88.     The Redbox Trade Dress is entitled to protection under the Lanham Act, 15 U.S.C. § 1125(a).  The Redbox Trade Dress has a highly distinctive appearance that is non-functional.

89. The Redbox Trade Dress is inherently highly distinctive and/or has also acquired substantial widespread recognition and acquired distinctiveness or secondary meaning in the marketplace through Redbox's extensive and continuous use, advertising, promotion and rendering of services sales through vending machines employing the Redbox Trade Dress for many years throughout the United States. Through that extensive and continuous use, advertising, promotion and rendering of services, the Redbox Trade Dress has become a well-known indicator of the origin and/or quality of Redbox's goods and services before Defendant's unauthorized use of the Redbox Trade Dress.

90. Upon information and belief, Defendant copied Redbox's distinctive stylistic choices when it modified the exterior of its vending machines to be substantially similar to the Redbox Trade Dress.

91. Upon information and belief, Defendant's use of the Redbox Trade Dress or colorable imitations thereof has been intentional and willful, as is evidenced at least by the high degree of similarity of the appearance of the New DVDXpress Kiosks and the Redbox Trade Dress (as embodied in the Redbox Kiosk), as shown below:

**THE NEW DVDXPRESS KIOSK**        **THE REDBOX KIOSK**




CHICAGO/#3018086

92.     Upon information and belief, Defendant had actual knowledge of the Redbox Trade Dress before it decided to begin using the New DVDXpress Kiosks in commerce.

93.     Defendant's use in commerce of the Redbox Trade Dress, and/or confusingly similar designs, is likely to cause confusion or mistake, or to deceive as to the affiliation, connection or association of Defendant with Redbox, or the origin, sponsorship or approval of Defendant's products or commercial activities in violation of 15 U.S.C. § 1125(a).

94.     Upon information and belief, customers have actually been confused or deceived by the use of the Redbox Trade Dress by Defendant and have attempted to return Redbox DVDs to Defendant's New DVDXpress Kiosks.

95.     Defendant's use described above constitutes infringement of Redbox's Trade Dress in violation of 15 U.S.C. § 1125(a). The foregoing acts of infringement have been and continue to be deliberate, and upon information and belief, have continued even after Defendant was aware of the Redbox Trade Dress thus are willful and wanton, making this an exceptional case within the meaning of 15 U.S.C. § 1117.

96.     As a direct and proximate result of Defendant's infringement of the Redbox Trade Dress, Redbox has suffered and continues to suffer damages to its profits, sales and business. They compete in identical channels of trade for identical goods and services. Redbox and Defendant are direct direct competitors. The trade dress infringement complained of herein has caused and, unless restrained and enjoined, will cause irreparable harm, damage and injury to Redbox, for which Redbox has no adequate remedy at law. The injury to Redbox is and continues to be ongoing and irreparable.

97.     As a direct and proximate result of Defendant's conduct, Redbox is entitled to injunctive relief under 15 U.S.C. § 1116, and Redbox is also entitled to recover Defendant's profits, Redbox's non-duplicative actual damages, and Redbox's costs and reasonable attorneys' fees.

98.     As a direct and proximate result of Defendant's violation of Redbox Trade Dress, Redbox has suffered and continues to suffer damages to its profits, sales and business.

## COUNT III

## (TRADEMARK INFRINGEMENT UNDER 15 U.S.C. § 1114(1))

99.     Plaintiff repeats and realleges Paragraphs 1–98 of this Complaint as and for this Paragraph 99.

100.     As a result of Redbox's conduct of business under its mark REDBOX in interstate commerce using the color red over more than a decade, the mark REDBOX is widely recognized and has become a valuable indicator of the source and origin of the DVDs and DVD rental services provided by Redbox, which in turn drives Redbox's sales.

101.     Redbox owns U.S. Registration Nos. 2,919,854; 2,988,869; and 3,082,012 for the mark REDBOX.

102.     The mark REDBOX, as evidenced by the Redbox Word Registrations, is entitled to protection under the Lanham Act, 15 U.S.C. § 1114(1).  The mark REDBOX is inherently distinctive.

103.     The Redbox Red Mark is inherently highly distinctive and has also acquired substantial widespread recognition and acquired distinctiveness or secondary meaning in the marketplace through Redbox's extensive and continuous use, advertising, promotion and rendering of services sales through vending machines under the mark REDBOX for many years throughout the United States.  Through that extensive and continuous use, advertising, promotion

CHICAGO/#3018086

and rendering of services, the mark REDBOX has become a well-known indicator of the origin and/or quality of Redbox's goods and services.

104.    By using the color red over substantially all of the surface of its vending machines used to offer substantially the same goods and services as Redbox, Defendant has created a likelihood of confusion with the mark REDBOX.

105.    Upon information and belief, Defendant intended to trade on Redbox's substantial goodwill in its mark REDBOX when it modified the exterior of its vending machines to be substantially red in color (other than signage) and included the mark REDBOX in the metadata for its website.

106.    Upon information and belief, Defendant's decision to use the color red over substantially all of the exterior of its vending machines and include the mark REDBOX in its website has been intentional and willful.

107.    Upon information and belief, Defendant had actual knowledge of Redbox's ownership of the mark REDBOX before it decided to begin using the New DVDXpress Kiosks in commerce.

108.    Defendant had constructive knowledge of Redbox's ownership of the mark REDBOX based on Redbox's ownership of the Redbox Word Registrations, 15 U.S.C. § 1072, and Redbox's use of the registered mark symbol (®) following the mark REDBOX on its vending machines, 15 U.S.C. § 1111.

109.    Defendant's use in commerce of the mark REDBOX, and/or confusingly similar designs, is likely to cause confusion or mistake, or to deceive as to the affiliation, connection or association of Defendant with Redbox, or the origin, sponsorship or approval of Redbox's products or commercial activities in violation of 15 U.S.C. § 1114(1).

CHICAGO/#3018086

110.    Upon information and belief, customers have actually been confused or deceived by the use of the Redbox Red Mark by Defendant and have attempted to return Redbox DVDs to Defendant's New DVDXpress Kiosks.

111.    Defendant's use described above constitutes infringement of Redbox's registered Redbox Red Mark in violation of 15 U.S.C. § 1114(1).  The foregoing acts of infringement have been and continue to be deliberate, and upon information and belief, have continued even after Defendant was aware of Redbox's ownership of the mark REDBOX, and thus are willful and wanton, making this an exceptional case within the meaning of 15 U.S.C. § 1117.

112.    As a direct and proximate result of Defendant's violation of Redbox's Red Mark, Redbox has suffered and continues to suffer damages to its profits, sales and business. Defendant and Plaintiff are direct competitors.  They compete in identical channels of trade for identical goods and services.  The trademark infringement complained of herein has caused and, unless restrained and enjoined, will cause irreparable harm, damage and injury to Redbox, for which Redbox has no adequate remedy at law.  The injury to Redbox is and continues to be ongoing and irreparable.

113.    As a direct and proximate result of Defendant's conduct, Redbox is entitled to injunctive relief under 15 U.S.C. § 1116, and Redbox is also entitled to recover Defendant's profits, Redbox's non-duplicative actual damages, and Redbox's costs and reasonable attorneys' fees.

## COUNT IV

## (FALSE ADVERTISING UNDER 15 U.S.C. § 1125(a))

114.    Plaintiff repeats and realleges Paragraphs 1–113 of this Complaint as and for this Paragraph 114.

CHICAGO/#3018086

115.    Defendant knowingly and wrongfully states on its website, kiosk signage, in-store signage, kiosk displays, DVD packaging, and social media accounts that customers can "**RENT IT HERE FIRST 28 DAYS BEFORE NETFLIX & REDBOX**," i.e., that customers can rent new-release DVDs through DVDXpress 28 days before they are available from Redbox.

116.    Defendant has knowingly and wrongfully made this claim both generally (i.e., in reference to *all* new-release DVDs) and specifically in respect to certain new-release DVDs. These statements are false and misleading because DVDXpress does not offer all new-release DVDs 28 days before Redbox and specific new-release DVDs identified by DVDXpress were first offered by Redbox and DVDXpress on the same day (i.e., they were not offered by DVDXpress 28 days before they were offered by Redbox).

117.    Defendant further knowingly and wrongfully states on its website, kiosk displays, and social media accounts that customers can rent certain new-release DVDs through DVDXpress before they are available from Redbox. These statements are false and misleading because DVDXpress did not offer the new-release DVDs identified in these statements before Redbox.

118.    These promises are valuable and influence purchaser decisions, because customer demand for new-release DVDs is highest during the first week they are released and declines significantly over the following weeks. Because customers are likely to be deceived into believing that Defendant offers new-release DVDs well before Redbox (including the specific new-release DVDs identified in Defendant's advertisements), these statements are likely to cause customers to do business with Defendant rather than competitors such as Redbox.

119.    The statement that Defendant offers all new-release DVDs before Redbox is a literal falsehood. The implication that Defendant offers all or many new-release DVDs 28 days

56

before Redbox is also deceptive and misleading. Many, if not most, new-release DVDs are offered by Redbox and Defendant on the same day.

120. The statements that Defendant offers certain new-release DVDs before Redbox, including but not limited to the movies identified above, are literal falsehoods and are deceptive and misleading. Each such movie identified above was available through Redbox's service on the same day it was available through Defendant's service.

121. By making false statements on its website and in other advertisements, including through its kiosks located across the United States and other promotions and communications directed to its customers and prospective customers, Defendant caused its false statements to enter interstate commerce.

122. Defendant's falsehoods and deceptive and misleading statements in its advertisements and promotions have misled actual and potential customers and allowed Defendant to obtain sales under false pretenses, thus taking those sales out of the flow of commerce and denying its competitors (including Redbox) the opportunity to compete honestly for the business. As a result, Defendant has reaped unfair profits from its various false advertisements and promotions, while at the same time denying substantial potential business in the form of tens of thousands of rental transactions to competitors such as Redbox.

123. Defendant's false, misleading, and deceptive commercial advertising and promotion described above constitutes unfair competition and false advertising in violation of 15 U.S.C. § 1125(A). The foregoing acts have been and continue to be deliberate, and upon information and belief, have continued even after Defendant was aware or reasonably should have been aware of the literal falsity of these statements and deceptive and misleading nature of

these statements, and thus are willful and wanton, making this an exceptional case within the meaning of 15 U.S.C. § 1117.

124.    As a direct and proximate result of Defendant's false, deceptive, and misleading commercial advertising, Redbox has suffered and continues to suffer damages to its profits, sales and business.   Defendant and Plaintiff are direct competitors.   They compete in identical channels of trade for identical goods and services.   The false advertising complained of herein has caused and, unless restrained and enjoined, will cause irreparable harm, damage and injury to Redbox, for which Redbox has no adequate remedy at law.   The injury to Redbox is and continues to be ongoing and irreparable.

125.    As a direct and proximate result of Defendant's conduct, Redbox is entitled to injunctive relief under 15 U.S.C. § 1116, and Redbox is also entitled to recover Defendant's profits, Redbox's non-duplicative actual damages, and Redbox's costs and reasonable attorneys' fees.

## COUNT V

### (VIOLATION OF THE ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT (THE "UDTPA") (815 ILCS 510/2)

126.    Plaintiff repeats and realleges Paragraphs 1–125 of this Complaint as and for this Paragraph 126.

127.    Defendant has repeatedly made the claim "**RENT IT HERE FIRST 28 DAYS BEFORE NETFLIX & REDBOX**," i.e., that customers can rent new-release DVDs through DVDXpress 28 days before they are available through Redbox.

128.    Defendant has knowingly and wrongfully made this claim both generally (i.e., in reference to *all* new-release DVDs) and specifically in respect to certain new-release DVDs. These statements are false and misleading because DVDXpress does not offer all new-release

DVDs 28 days before Redbox, and specific new-release DVDs identified by DVDXpress were first offered by Redbox and DVDXpress on the same day.

129.    Defendant has knowingly and willfully made false and misleading statements on its website, kiosk displays, and social media accounts that customers can rent certain new-release DVDs through DVDXpress before they are available through Redbox.  These statements are false and misleading because DVDXpress did not offer the new-release DVDs identified in these statements before Redbox.

130.    These promises are valuable and influence purchaser decisions, because customer demand for new-release DVDs is highest on the first five days they are released and declines significantly over the following weeks.  Because customers are likely to be deceived into believing that Defendant offers new-release DVDs well before Redbox (including the specific new-release DVDs identified in Defendant's advertisements), these statements are likely to cause customers to do business with Defendant rather than competitors such as Redbox.

131.    The statement that Defendant offers all new-release DVDs before Redbox is a literal falsehood.  The implication that Defendant offers all or many new-release DVDs 28 days before Redbox is also deceptive and misleading.  Many, if not most, new-release DVDs are offered by Redbox and Defendant on the same day.

132.    The statements that Defendant offers certain new-release DVDs before Redbox, including but not limited to the movies identified above, are literal falsehoods and are deceptive and misleading.  Each of these movies was available through Redbox's service on the same day it was available through Defendant's service.

133.    Defendant's false and misleading statements regarding the availability of films through Redbox's service disparage Redbox's service.

134. Defendant has further unfairly competed by utilizing Redbox's well-known and distinctive Redbox Trade Dress on Defendant's New DVDXpress Kiosks to deceive actual and potential customers into believing that the New DVDXpress Kiosks are somehow associated or affiliated with Redbox, thereby causing customers to transact with Defendant rather than Redbox.

135. Defendant's falsehoods and deceptive and misleading statements in its advertisements and promotions have deceived actual and potential customers and allowed Defendant to obtain sales under false pretenses, thus taking those sales out of the flow of commerce and denying its competitors (including Redbox) the opportunity to compete honestly for the business. As a result, Defendant has reaped unfair profits from its various false advertisements and promotions, while at the same time denying substantial potential business in the form of tens of thousands of rentals to competitors such as Redbox.

136. Redbox and other competitors in the film delivery service market stand to suffer irreparable harm if Defendant does not cease its unfair and deceptive business practices.

137. As such, Defendant's false statements regarding the characteristics and benefits of its services constitutes a violation of the Illinois Uniform Deceptive Trade Practices Act, 5 ILCS 510/2(a)(5) and (a)(8), and injunctive relief should be granted to Redbox. Defendant's use of the Redbox Trade Dress further constitutes a violation of the Illinois Uniform Deceptive Trade Practices Act, 5 ILCS 510/2(a)(1)–(3) and (12), and injunctive relief should be granted to Redbox.

138. Redbox respectfully requests that the Court enter an Order granting judgment in favor of Redbox and against Defendant on Count V, awarding preliminary and permanent injunctive relief to enjoin Defendant from (i) employing the Redbox Trade Dress on Defendant's

vending machines and (ii) falsely and misleadingly representing to its customers and prospects that films are available from Defendant either "before" or "28 days before" they are available through Redbox service, and (iii) grant such other and further relief as this Court deems just and proper.

## COUNT VI

### (VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT (THE "CFA") (815 ILCS 505/1, *ET SEQ*.))

139.    Plaintiff repeats and realleges Paragraphs 1–138 of this Complaint as and for this Paragraph 139.

140.    Defendant has made false statements and misrepresentations to its customers that have allowed it to acquire business under false pretenses, thus taking that business out of the flow of commerce and denying its competitors the opportunity to compete honestly for the business.

141.    Public policy supports the protection of consumers from unfair business practices. Defendant's false and misleading statements regarding the availability of films through Defendant's service before they are available through competing services (including Redbox's service) offends this public policy and implicates consumer protection concerns, as consumers unwittingly do not receive the benefits from Defendant's service for which they paid.

142.    Defendant's false and misleading statements regarding the availability of films through its service before they are available through Redbox and its use of the Redbox Trade Dress is clearly unethical and unscrupulous, and cause substantial injury to customers.

143.    Defendant's actions damage Redbox and other competitors in the form of lost profits and interference with prospective business relationships.   Defendant's unfair and deceptive business practices are directed to and harmful to the video rental market and its

consumers as well, as they distort the market. Those practices also implicate consumer protection concerns, as consumers unwittingly do not receive the services for which they contracted and paid.

144.    Redbox respectfully requests that the Court enter an Order granting judgment in favor of Redbox and against Defendant on Count VI, awarding compensatory damages in an amount to be determined at trial, and such other and further relief as this Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

1.    For temporary, preliminary and permanent injunctive relief prohibiting Defendant, its agents, or anyone working for, in concert with, or on behalf of Defendant from engaging in false or misleading advertising with respect to (a) the general availability of DVDs or the availability of specific DVDs through Defendant's service "28 days" before they are available through Redbox's service and/or (b) the general availability of DVDs or the availability of specific DVDs through Defendant's service before they are available through Redbox's service, which relief includes but is not limited to removal of all false or misleading advertisements and corrective advertising in order to remedy the effects of Defendant's false advertising;

2.    For temporary, preliminary and permanent injunctive relief prohibiting Defendant, its agents, or anyone working for, in concert with, or on behalf of Defendant from infringing upon the Redbox Word Mark, the Redbox Color Mark, and/or the Redbox Trade Dress, including but not limited through the use of the color red on the exterior surface of its vending machines (including but not limited to its use of the color red on its New DVDXpress Kiosks), which relief includes but is not limited to changing the exterior color of its vending machines to a color that is not red or confusingly similar to red;

3.    For an order requiring Defendant to correct any erroneous impressions persons may have derived concerning the nature, characteristics or qualities of Redbox's service, including but not limited to the availability of new release titles through Redbox's service, including without limitation the placement of corrective advertising and providing written notice to the public;

62

4.      That Defendant be adjudged to have violated 15 U.S.C. § 1125(a) by unfairly competing against Plaintiff by using false, deceptive or misleading statements of fact that misrepresent the nature, quality and characteristics of both the Defendant's service and Plaintiff's service;

5.      That Defendant be adjudged to have violated Illinois Compiled Statute 815 ILCS 510/2 by engaging in deceptive trade practices and injuring Plaintiff by using deceptive representations in connection with its goods or services;

6.      That Defendant be adjudged to have violated Illinois Compiled Statute 815 ILCS 505/1 by engaging in deceptive trade practices and injuring Plaintiff by using deceptive representations in connection with its goods or services;

7.      That Plaintiff be awarded Defendant's profits obtained by Defendant as a consequence of its conduct;

8.      That Plaintiff be awarded its non-duplicative actual damages that Plaintiff has sustained in consequence of Defendant's conduct;

9.      That Plaintiff recover its costs and reasonable attorneys' fees;

10.     That all of Defendant's misleading and deceptive materials be removed and destroyed pursuant to 15 U.S.C. § 1118;

11.     That Plaintiff be granted prejudgment and post-judgment interest; and

12.     That Plaintiff have such other and further relief as the Court deems just and proper.

## **JURY TRIAL DEMAND**

Plaintiff hereby demands a trial by jury on all triable issues.

Respectfully submitted,

REDBOX AUTOMATED RETAIL, LLC

By:    s/ Thomas R. Dee
        One of Its Attorneys

Thomas R. Dee, Bar No. 6215954
Nicole J. Wing
John K. Burke, Bar No. 6312447
Vedder Price P.C.
222 North LaSalle Street
Chicago, Illinois 60601
T:  +1 312 609 7500

Dated:  July 31, 2017

64