IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |
|---|---|
| REDBOX AUTOMATED RETAIL, LLC,<br><br>            Plaintiff,<br><br>v.<br><br><br>XPRESS RETAIL LLC,<br><br>            Defendant. | No. 1:17-CV-05596<br><br>Judge: Hon. Gary Feinerman<br>Magistrate:  Hon. Finnegan |

**PLAINTIFF'S MEMORANDUM IN SUPPORT
OF ITS MOTION FOR PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

**Page**

I.      Introduction .................................................................................................... 1

II.     Factual Background ......................................................................................... 2

        A.      Redbox's service, trademarks, and trade dress ........................................ 2

        B.      DVDXpress's Infringement of the Redbox Marks and Trade Dress .................... 3

        C.      DVDXpress's False & Misleading Statements ........................................ 4

III.    Legal Standard ................................................................................................ 5

        A.      Preliminary Injunctions .................................................................. 5

        B.      False Advertising .......................................................................... 6

        C.      Trade Dress and Trademark Infringement ............................................. 6

IV.     Argument ........................................................................................................ 7

        A.      Redbox is likely to succeed on the merits ............................................. 7

                1.      False Advertising ............................................................... 7

                2.      Trademark and Trade Dress Infringement .................................. 11

        B.      Redbox has no adequate remedy at law and would be irreparably harmed
                without injunctive relief ................................................................ 13

        C.      The balance of harms favors Redbox .................................................. 14

        D.      The public interest favors Redbox .................................................... 16

        E.      Any bond required from Plaintiff should be minimal ............................... 16

V.      Conclusion .................................................................................................... 16

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*A.J. Canfield Co. v. Vess Beverages, Inc.*,
  796 F.2d 903 (7th Cir. 1986) ....................................................................7

*Abbott Labs. v. Mead Johnson & Co.*,
  971 F.2d 6 (7th Cir. 1992) ..................................................5, 13, 16, 17

*Checker Car Club of Am., Inc. v. Fay*,
  122 U.S.P.Q.2d 1176 (N.D. Ill. 2017) ...................................................13

*Christian Legal Soc'y v. Walker*,
  453 F.3d 853 (7th Cir. 2006) ....................................................................5

*Eli Lilly & Co. v. Natural Answers, Inc.*,
  233 F.3d 456 (7th Cir. 2000) ..............................................................15, 16

*Ezell v. City of Chicago*,
  651 F.3d 684 (7th Cir. 2011) ....................................................................5

*First Health Group Corp. v. United Payors & United Providers, Inc.*,
  95 F. Supp. 2d 845 (N.D. Ill. 2000) .......................................................15

*Hot Wax, Inc. v. Turtle Wax, Inc.*,
  191 F.3d 813 (7th Cir. 1999) ......................................................6, 10, 11

*Ideal Indus., Inc. v. Gardner Bender, Inc.*,
  612 F.2d 1018 (7th Cir. 1979) .................................................................16

*Int'l Kennel Club of Chi., Inc. v. Mighty Star, Inc.*,
  846 F.2d 1079 (7th Cir.1988) ....................................................................6

*Kraft Foods Grp. Brands LLC v. Cracker Barrel Old Country Store, Inc.*,
  735 F.3d 735 (7th Cir. 2013) ...................................................................13

*Kraft, Inc. v. FTC*,
  970 F.2d 311 (7th Cir. 1992) ...................................................................10

*Miyano Mach. USA, Inc. v. MiyanoHitec Mach., Inc.*,
  576 F. Supp. 2d 868 (N.D. Ill. 2008) ......................................................13

*Northern Star Industries v. Douglas Dynamics LLC*,
  848 F. Supp.2d 934 (E.D. Wis. 2012) ......................................................17

CHICAGO/#3019750

*Platinum Home Mortgage Corp. v. Platinum Fin. Grp., Inc.*,
    149 F.3d 722 (7th Cir. 1998) ........................................................................7

*Processed Plastic Co. v. Warner Commc'ns, Inc.*,
    675 F.2d 852 (7th Cir. 1982) ......................................................................13

*Promatek Indus., Ltd. v. Equitrac Corp.*,
    300 F.3d 808 (7th Cir. 2002) ......................................................................12

*Roland Mach. Co. v. Dresser Indus.*,
    749 F.2d 380 (7th Cir. 1984) ......................................................................13

*Solo Cup Operating Corp. v. Lollicup USA, Inc.*,
    No. 16 C 8041, 2017 WL 3581182 (N.D. Ill. Aug. 18, 2017)....................6

*Thomas & Betts Corp. v. Panduit Corp.*,
    138 F.3d 277 (7th Cir. 1998) ........................................................................7

*Ty, Inc. v. Jones Grp., Inc.*,
    237 F.3d 891 (7th Cir. 2001) ..........................................................5, 6, 14, 15

*Vaughan Mfg. Co. v. Brikam Int'l, Inc.*,
    814 F.2d 346 (7th Cir. 1987) ........................................................................7

**Statutes**

15 U.S.C. § 1091(c) .............................................................................................7

15 U.S.C. § 1115.................................................................................................7

15 U.S.C. § 1115(b) ...........................................................................................13

15 U.S.C. § 1125(a)(1)(A) ..................................................................................12

15 U.S.C. § 1125(a)(3).........................................................................................6

CHICAGO/#3019750

Plaintiff Redbox Automated Retail, LLC ("Redbox" or "Plaintiff"), in support of its Motion for Preliminary Injunction, hereby presents its memorandum in support thereof. Defendant Xpress Retail LLC ("DVDXpress" or "Defendant") should be enjoined from (i) making false or misleading statements that customers can rent movies through Defendant's service before they are available through Redbox, including through the statement "**RENT IT HERE FIRST 28 DAYS BEFORE NETFLIX & REDBOX**" and (ii) infringing upon Redbox's trade dress and federally registered trademarks by offering DVDs through kiosks with an exterior surface that is substantially red in color. Defendant should also be required to publish corrective advertising.

## I.     Introduction

Over the past decade, Redbox has become the nation's leading low-cost provider of new-release DVDs for consumers to rent for home entertainment. Redbox offers its DVDs through its kiosks with a distinctive red coloration. DVDXpress directly competes with Redbox by offering its own new-release DVD rental service through automated vending machines. Rather than competing with Redbox fairly, DVDXpress has begun attempting to drive customers away from Redbox to its own DVD rental service by (i) redesigning its vending machines to copy Redbox's federally registered unique and distinctive red vending machine coloration so as to attract customers familiar with Redbox's high-quality service; (ii) falsely advertising that newly released films are available through DVDXpress's service before they are available through Redbox's service; (iii) infringing on Redbox's federally registered mark REDBOX through the stylization of its vending machines and in the metadata for its website so as to attract customers interested in Redbox; and (iv) copying Redbox's distinctive vending machine and DVD case designs.

1

Redbox's goodwill and reputation in the market has already been irreparably harmed through actual customer confusion caused by DVDXpress's infringement on Redbox's trade dress and trademarks and the widespread circulation of DVDXpress's false and misleading claims regarding the availability of DVDs through Redbox's service. Absent injunctive relief, this confusion will continue and, likely, increase.[1]

## II. Factual Background

Redbox is the nation's leading low-cost alternative for consumers to rent new-release DVDs for home entertainment. (Hale Aff. ¶ 3.)[2] Redbox rents DVDs to consumers through innovative, consumer-friendly automated, self-service kiosks located at tens of thousands of retail locations throughout the United States. (Hale Aff. ¶ 3.)

DVDXpress directly competes with Redbox by offering its own DVD rental service through automated kiosks. (Hale Aff. ¶ 24.)

### A. Redbox's service, trademarks, and trade dress.

Redbox owns U.S. Registration Nos. 2,919,854, 2,988,869, and 3,082,012 for the mark REDBOX in connection with its goods and services (the "Redbox Word Registrations"). (Hale Aff. ¶¶ 8–10.) Redbox also owns U.S. Registration Nos. 3,438,474 and 3,438,623 (the "Redbox Color Registrations") for the distinctive red color applied to the exterior surface of its DVD vending machines (the "Red Marks"). (Hale Aff. ¶¶ 11–12.) Redbox has acquired trade dress

---

[1] DVDXpress's actions tacitly acknowledge the harm caused by its trade dress infringement and the false and misleading statements on its website. DVDXpress post signage on its redesigned kiosks warning customers not to return Redbox DVDs—demonstrating customers have already been confused and mistaken DVDXpress's kiosks for ones owned by Redbox. (Hale Aff. ¶ 31.) Further, shortly after Redbox filed this lawsuit, DVDXpress revised its website to remove some—but not all—of the claims that films were available through DVDXpress "28 days before" Redbox, effectively admitting that these statements were false and misleading. (Hale Aff. ¶ 48.)

[2] The Hale Affidavit is attached as <u>Exhibit A</u> hereto.

rights based on its use of the color red over substantially all of the external surface of its DVD vending machines for well over a decade (the "Redbox Trade Dress").

Redbox offers DVD rentals, including rentals of new-release DVDs, to consumers through its nationwide network of over 40,000 self-service kiosks located throughout the United States. (Hale Aff. ¶¶ 3, 16.) Redbox has provided DVD rentals through its kiosks since at least 2003. (Hale Aff. ¶ 4.) Each of Redbox's kiosks features the federally registered mark REDBOX and is branded using Redbox's distinctive red coloring over the majority of the face and sides of the kiosk; Redbox's distinctive red coloring is also prominently featured on its DVD packaging. (Hale Aff. ¶¶ 4–5.) Over more than 10 years, Redbox has rented over five billion DVDs to tens of millions of customers through its kiosks featuring Redbox's distinctive red coloring. (Hale Aff. ¶ 16.) Redbox has also utilized marketing and advertising, seen by millions of viewers, which heavily featured Redbox's marks and trade dress. As a result of this extensive and long-standing use, customers have come to recognize distinctive red kiosks and DVD packages as signifying Redbox as the source of its DVD rentals. (Hale Aff. ¶ 15.) This recognition is reflected in the media's widespread discussion of Redbox's "signature" bright red-colored kiosks. (Hale Aff. ¶¶ 18–19.)

**B.     DVDXpress's Infringement of the Redbox Marks and Trade Dress**

After using kiosks that featured a gray front panel, DVDXpress redesigned its kiosks to be entirely red in color (other than signage). (Hale Aff. ¶ 28.) DVDXpress admits on its website that its newer machines look different enough from its older machines that customers should not mistake one for another. (Hale Aff. ¶ 29.) Examples of Redbox's kiosks and DVDXpress's redesigned kiosks are provided below:





Redbox Kiosk                    DVDXpress Kiosk[3]

DVDXpress also uses Redbox's registered mark REDBOX in the metadata for its website as a keyword to attract customers and drive traffic to its own website when customers search for Redbox's service using a search engine such as Google. (Hale Aff. ¶ 45.)

### C. DVDXpress's False & Misleading Statements

DVDXpress's kiosks, DVD packaging, in-store signage, Twitter page, Facebook page, and website all prominently feature the unqualified statement "**RENT IT HERE FIRST 28 DAYS BEFORE NETFLIX & REDBOX**." (Hale Aff. ¶ 34.) The vast majority of DVDs available through DVDXpress's kiosks (which are rented through kiosks containing this statement and are provided to customers in DVD packages containing this statement) are not available through DVDXpress "28 days before" they are available through Redbox. (*See, e.g.,* Hale Aff. ¶¶ 35, 36.) Dozens of blockbuster new-release movies that were first available through DVDXpress and Redbox on the same day have been rented out by DVDXpress in packaging

---

[3] https://www.facebook.com/DVDXpress-170314133005138/app/208195102528120/.

containing this statement prominently on their covers through kiosks containing this statement prominently emblazoned across signage over the screens of the kiosks.[4] (*See, e.g.,* Hale Aff. ¶¶ 35–44.)

## III.   Legal Standard

### A.   Preliminary Injunctions

To obtain a preliminary injunction, a plaintiff must establish that (i) its case has "some likelihood of success on the merits" and (ii) it has "no adequate remedy at law and will suffer irreparable harm if a preliminary injunction is denied." *Ezell v. City of Chicago*, 651 F.3d 684, 694 (7th Cir. 2011). Once the plaintiff meets these threshold requirements, the district court (iii) must consider the irreparable harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied as well as (iv) the public interest in granting or denying the injunction. *Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891, 895 (7th Cir. 2001). In balancing the harms, a court must weigh these factors against one another "in a sliding scale analysis." *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006). "The sliding scale approach is not mathematical in nature, rather 'it is more properly characterized as subjective and intuitive, one which permits district courts to weigh the competing considerations and mold appropriate relief.'" *Ty*, 237 F.3d at 895–96 (quoting *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 12 (7th Cir. 1992)). "[T]he more likely the plaintiff will succeed on the merits, the less the balance of irreparable harms need favor the plaintiff's position." *Ty*, 237 F.3d at 895. At the preliminary injunction stage, a plaintiff need only demonstrate that it has a "'better than negligible' chance of succeeding on the

---

[4] DVDXpress also advertises that it offers select new-release titles "before Redbox," when those titles are in fact offered by DVDXpress and Redbox on the same day. (*See, e.g.,* Hale Aff. ¶ 46.)

5

merits so that injunctive relief would be justified." *Id.* (quoting *Int'l Kennel Club of Chi., Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1084 (7th Cir. 1988)

### B. False Advertising

To establish a claim of false advertising under the Lanham Act, a plaintiff must prove:

(1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a loss of goodwill associated with its products.

*Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 819 (7th Cir. 1999). A defendant is liable for both statements that are literally false and statements "that, while literally true, are misleading in context or likely to deceive customers." *Solo Cup Operating Corp. v. Lollicup USA, Inc.*, No. 16 C 8041, 2017 WL 3581182, at *4 (N.D. Ill. Aug. 18, 2017). False advertising under the Lanham Act is determined based on strict liability: "[t]he only question is whether the 'statement' is true and not misleading at the time it is made." *Id.* If a statement by the defendant is shown to be literally false, a plaintiff need not show that any customer was actually deceived. *Hot Wax*, 191 F.3d at 820.

### C. Trade Dress and Trademark Infringement

To prevail in a trademark infringement action, a plaintiff must establish that (i) it has protectable trademark rights and (ii) there is a likelihood of confusion. *Ty, Inc. v. Jones Grp.*, 237 F.3d 891, 897 (7th Cir. 2001). For a claim of trade dress infringement, the plaintiff also must establish that its trade dress is nonfunctional. 15 U.S.C. § 1125(a)(3).

A registration on the Principal Register is *prima facie* evidence of the validity of the registered mark and the registrant's ownership and exclusive right to use the mark in interstate

CHICAGO/#3019750

commerce. 15 U.S.C. § 1115. Similarly, a registration on the Supplemental Register establishes that the registered mark or design is not functional. 15 U.S.C. § 1091(c). For marks not registered on the Principal Register, a plaintiff may demonstrate ownership of a protectable mark by showing a likelihood that its mark is either inherently distinctive or has acquired distinctiveness.[5] Acquired distinctiveness can be established by presenting evidence such as "direct consumer testimony, consumer surveys, length and manner of use, amount and manner of advertising, volume of sales, place in the market[,] and proof of intentional copying." *Thomas & Betts Corp. v. Panduit Corp.*, 138 F.3d 277, 291 (7th Cir. 1998) (internal quotation marks omitted).

## IV. Argument

### A. Redbox is likely to succeed on the merits.

Redbox is likely to prevail at trial on its claims (which greatly exceeds the *de minimis* level of "some likelihood" of success required to merit a preliminary injunction).

#### 1. False Advertising

Redbox is likely to succeed on its false advertising claims under the Lanham Act.

##### a. DVDXPRESS has extensively published false and misleading statements of fact in commercial advertisements and promotions about Redbox's service.

DVDXpress has made two types of false and misleading statements. First, DVDXpress claims that customers can "**RENT IT HERE FIRST 28 DAYS BEFORE NETFLIX & REDBOX**," i.e., that films are available through DVDXpress's service "28 days" before they are available through Redbox's service (the "28 Days Before Claim"). (Hale Aff. ¶ 34.) This is

---

[5] A plaintiff is not required to present survey evidence establishing acquired distinctiveness or a likelihood of confusion to succeed at the preliminary injunction stage. *Platinum Home Mortgage Corp. v. Platinum Fin. Grp., Inc.*, 149 F.3d 722 , 728–29 (7th Cir. 1998); *Vaughan Mfg. Co. v. Brikam Int'l, Inc.*, 814 F.2d 346, 349 (7th Cir. 1987); *A.J. Canfield Co. v. Vess Beverages, Inc.*, 796 F.2d 903, 908 (7th Cir. 1986).

literally false because DVDXpress has made this statement specifically in reference to films that were made available by DVDXpress and Redbox *on the same day*.[6] For example, DVDXpress rented the movie *Kong: Skull Island* in packaging containing the 28 Days Before Claim and advertised on its website that it would have the movie *Kong: Skull Island* "28 days before" Redbox, as shown below:



These claims are literally false, as Redbox began offering this title within 28 days of its release. DVDXpress repeated these claims on its website and the kiosk description pages for a number of movies, and every movie offered by DVDXpress is packaged in a case prominently featuring the 28 Days Before Claim. Further, as a general, unqualified statement made without reference to a particular film, this statement is also literally false because the vast majority of films offered by DVDXpress are available through Redbox less than 28 days later.[7]

---

[6] DVDXpress has further made this statement in reference to films that were first offered by DVDXpress before they were offered by Redbox, but that were offered by Redbox less than 28 days after they were first offered by DVDXpress. (*See, e.g.,* Hale Aff. ¶ 35(d).) In addition to being literally false, these statements are highly misleading, as their sweeping nature—made without any qualification—and prominent placement on DVDXpress's kiosk signage, website and DVD packaging suggest to customers that DVDXpress offers *all* films before Redbox does.
[7] These statements are also highly misleading for the same reason: customers are likely to believe that DVDXpress offers *all* films 28 days before Redbox does.

Second, in a tacit concession to the literal falsity of its 28 Days Before Claim, DVDXpress began modifying its website shortly after Redbox filed this lawsuit to replace the 28 Days Before Claim with the claim that certain films offered by DVDXpress were "Available before NETFLIX & REDBOX" (the "Before Claim").[8]  (Hale Aff. at ¶ 48.)   However, this change does not begin to reduce the irreparable harm being done to Redbox because the 28 Days Before Claim still appears on *all of DVDXpress's kiosks and DVD packages*.  Further, the Before Claim is also literally false because DVDXpress has made the Before Claim in reference to specific titles that were available through Redbox on the same day they were first offered by DVDXpress.  (*See, e.g.,* Hale Aff. ¶ 46.)   The following examples appear on DVDXpress's website of the Before Claim being made in reference to specific films first offered by Redbox on the same day they were offered by DVDXpress:





Redbox offered each of the above films on the day of release; thus, unless DVDXpress offered these films before their release, these statements are literally false.

Both the 28 Days Before Claim and the Before Claim have undoubtedly been (and continue to be) made in commercial advertising and promotion.  The 28 Days Before Claim is prominently plastered across the top of DVDXpress's kiosks (which are placed publicly and

---

[8] DVDXpress also made this and similar claims through its social media accounts prior to the filing of this lawsuit.  (Hale Aff. ¶ 42.)

where they are seen by every one of DVDXpress's customers before they rent a DVD from DVDXpress) as well as being featured on other point of sale advertisements and DVDXpress's DVD packages. (Hale Aff. ¶ 34.) The Before Claim appears on DVDXpress's website and social media feeds, where it is used to attract customers. (*See, e.g.,* Hale Aff. ¶ 46.)

> **b. DVDXpress's statements both actually deceived and have the tendency to deceive a substantial segment of their audience.**

Because DVDXpress's statements are literally false, its statements are conclusively presumed to either actually deceive the public or have a tendency to deceive. *Hot Wax*, 191 F.3d at 820 ("When the statement in question is actually false, the plaintiff need not show that the statement either actually deceived customers or was likely to do so.").

> **c. DVDXpress's deception is material.**

A false statement is "material" when it is likely to influence a customer's purchasing decision. *Hot Wax*, 191 F.3d at 819; *see also Kraft, Inc. v. FTC*, 970 F.2d 311, 322 (7th Cir. 1992) (a material statement "involves information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding a product.").

Consumer demand for a new-release DVD declines rapidly during the first month of release, with most rental transactions of a DVD title's life occurring in the first four weeks of availability of a new-release DVD. (Hale Aff. ¶ 21.) DVDXpress's false and misleading statements are likely to influence the purchasing decision of potential customers who are interested in renting titles within 28 days of their release. Such customers, upon seeing DVDXpress's false statements, are more likely to use DVDXpress's service than Redbox's service.

10

            **d.**      **DVDXpress caused its false statements to enter interstate commerce.**

DVDXpress's false statements were made to customers throughout the United States. DVDXpress's rental service is available nationwide (it claims that customers are able to rent a DVD at a DVDXpress kiosk in one state and return it to a DVDXpress kiosk in another state. (Hale Aff. ¶¶ 25, 49.) Further, DVDXpress's false statements have been made online through its website and social media accounts, which are visible to potential customers throughout the United States.

            **e.**      **Redbox is likely to be injured by DVDXpress's false statements.**

A plaintiff is likely to be injured by a false statement where the statement either is likely to cause a direct diversion of sales from itself to defendant or is likely to cause the plaintiff to lose goodwill associated with its service. *Hot Wax*, 191 F.3d at 819. Redbox and DVDXpress are direct competitors. (Hale Aff. ¶ 48.) As discussed above, customer demand for a newly released DVD is high within the first four weeks after its release. (Hale Aff. ¶ 21.) By falsely claiming that newly released titles are available through DVDXpress's service "before"—or, more significantly, "28 days" before—they are available from Redbox's service, DVDXpress is likely to drive potential customers to use its service instead of Redbox's service. Further, DVDXpress's statement directly erodes Redbox's goodwill by causing potential customers to believe that newly released DVDs will not be available from Redbox at the same time they are available from DVDXpress.

### 2. Trademark and Trade Dress Infringement

Redbox is likely to succeed on both its trademark and trade dress infringement claims under the Lanham Act.

11

For its trademark infringement claims, Redbox must establish that DVDXpress's use of the color red over the surface of its kiosks is likely to cause confusion as to the origin, sponsorship, or approval of the parties' respective goods and services. *See* 15 U.S.C. § 1125(a)(1)(A). There is no question that DVDXpress's use of the color red over substantially all of the surface of its kiosks is confusingly similar to the Redbox Trade Dress and Redbox's Red Marks that are the subject of the Redbox Color Registrations. Customers seeing a DVDXpress kiosk—particularly one located outdoors or one seen while driving—are likely to believe the kiosk is associated with Redbox.[9] Indeed, actual confusion has already occurred: DVDXpress posted signs on its redesigned kiosks warning Redbox's customers not to return Redbox DVDs to the DVDXpress kiosk. (Hale Aff. ¶ 31.) Similarly, DVDXpress's use of the color red on its kiosks is likely to cause confusion with the Redbox Word Registrations, as customers looking for Redbox will believe that DVDXpress's red-colored boxy vending machines are associated with Redbox.

Redbox is also likely to establish that its Red Marks and its Redbox Trade Dress are inherently distinctive or have acquired distinctiveness based on the tens of millions of customers who have rented billions of DVDs over the last 10 years through Redbox kiosks featuring the Red Marks and the Redbox Trade Dress to identify Redbox as the source of its goods and services. (Hale Aff. ¶ 16.) Millions of actual and potential customers have seen Redbox's advertising featuring the Red Marks and the Redbox Trade Dress. (Hale Aff. ¶ 18.) The Redbox Trade Dress is not functional, as it serves no purpose other than to identify Redbox as the source of DVDs provided through a Redbox kiosk. (Hale Aff. ¶ 16.) Finally, the Redbox Word

---

[9] "Initial interest confusion, which is actionable under the Lanham Act, occurs when a customer is lured to a product by the similarity of the mark, even if the customer realizes the true source of the goods before the sale is consummated." *Promatek Indus., Ltd. v. Equitrac Corp.*, 300 F.3d 808, 812 (7th Cir. 2002).

12

Registrations are registered on the Principal Register and are incontestable (Hale Aff. ¶¶ 8–10), providing a conclusive presumption that these registrations are valid. 15 U.S.C. § 1115(b).

> **B.** **Redbox has no adequate remedy at law and would be irreparably harmed without injunctive relief.**

In determining whether a defendant should be preliminarily enjoined, the Seventh Circuit looks to whether the harm caused to the plaintiff is "irreparable" — that is, it is "not fully compensable or avoidable by the issuance of a final judgment (whether a damages judgment or a permanent injunction, or both) in the plaintiff's favor." *Kraft Foods Grp. Brands LLC v. Cracker Barrel Old Country Store, Inc.*, 735 F.3d 735, 740 (7th Cir. 2013). In trademark and trade dress infringement cases, the Seventh Circuit presumes that a plaintiff is irreparably harmed by any infringement. *See, e.g.*, *Abbott Labs.*, 971 F.2d at 16 (recognizing the "well-established presumption that injuries arising from Lanham Act violations are irreparable, even absent a showing of business loss"); *Processed Plastic Co. v. Warner Commc'ns, Inc.*, 675 F.2d 852, 858 (7th Cir. 1982); *Checker Car Club of Am., Inc. v. Fay*, 122 U.S.P.Q.2d 1176, 1180 (N.D. Ill. 2017). This presumption is warranted because "it is nearly impossible to calculate the precise economic harm caused by damage to goodwill and reputation on account of such infringement." *Miyano Mach. USA, Inc. v. MiyanoHitec Mach., Inc.*, 576 F. Supp. 2d 868, 887 (N.D. Ill. 2008). This analysis applies equally to claims of false advertising under the Lanham Act, as it is similarly almost impossible to calculate the damages caused to a party's goodwill and reputation based on another's false and misleading statements. To demonstrate that a final judgment awarding damages would be inadequate, a plaintiff merely needs to demonstrate that an award of damages would be a "seriously deficient" remedy, not a "wholly ineffectual" one. *Roland Mach. Co. v. Dresser Indus.*, 749 F.2d 380, 386 (7th Cir. 1984).

CHICAGO/#3019750

Redbox faces a significant risk of irreparable harm related to its false advertising, trademark infringement, and trade dress infringement claims. DVDXpress's false statements regarding the availability of new-release DVDs through Redbox's service has and will continue to cause incalculable damage to Redbox's reputation and cause Redbox to lose customers to DVDXpress. The majority of rental income for a DVD is generated in the first month following its release. (Hale Aff. ¶ 21.) Customers encountering DVDXpress's false and misleading statements regarding the availability of new-release DVDs through DVDXpress "28 days" before they are available through Redbox will choose DVDXpress's service instead of Redbox's. Similarly, Redbox's goodwill with its customers will be incalculably eroded based on customers' incorrect belief that new-release DVDs are not available through Redbox based on DVDXpress's false and misleading statements.

Further, it is readily apparent that DVDXpress is infringing upon the Redbox Word Registrations, the Redbox Color Registrations, and the Redbox Trade Dress by using its redesigned kiosks with a substantially red exterior. This improper use of Redbox's marks and trade dress has robbed Redbox of its control of those marks and trade dress and creates a likelihood of confusion in the marketplace of DVDXpress's association with Redbox and causes Redbox to lose goodwill associated with its marks and trade dress. Accordingly, the Court should find that Redbox would be irreparably harmed without the grant of a preliminary injunction.

### C.    The balance of harms favors Redbox.

The Court must balance the potential irreparable harms to each party in the event that a preliminary injunction is granted or denied. *Ty*, 237 F.3d at 895. The more likely it is that a plaintiff will sustain its case on the merits, the less the balance of harms need to favor the

14

plaintiff to justify granting a preliminary injunction. *Id.*; *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 461 (7th Cir. 2000).

Here, there would be minimal harm caused to DVDXpress by enjoining it from making its false and misleading statement. As previously observed by the Northern District of Illinois, in false advertising cases, having a defendant "[r]efrain[] from making some statement may be of a great importance to a plaintiff and of marginal significance to [the] defendant while they explore the facts through discovery." *First Health Group Corp. v. United Payors & United Providers, Inc.*, 95 F. Supp. 2d 845, 847 (N.D. Ill. 2000). An injunction will not significantly harm DVDXpress, as it merely must refrain from making such false statements. In contrast, the harm to Redbox absent an injunction is incalculably great. DVDXpress has already demonstrated that it will willfully and deliberately make false statements regarding the availability of new-release DVDs through Redbox's service, because it knew or reasonably should have known its statements were false. There is no reason to believe that DVDXpress will not continue to brazenly make false and misleading statements comparing its service to Redbox's service, causing irreparable harm to Redbox's goodwill and reputation.

Similarly, there is no significant harm to DVDXpress by enjoining it from installing any additional kiosks with an exterior surface that is substantially red in color. DVDXpress was undoubtedly aware that Redbox identified itself to customers through its use of the Redbox Trade Dress and the Redbox Color Registrations prior to its decision to create its revised kiosks. In considering the harm caused to DVDXpress, the Court should exclude any burden caused by DVDXpress's voluntary adoption of a confusingly similar coloration on its kiosks as was already used—and federally registered—by Redbox. *See Ty*, F.3d at 904 (endorsing the district court's exclusion of the burden the defendant "voluntarily assumed by proceeding in the face of a known

15

risk"); *Ideal Indus., Inc. v. Gardner Bender, Inc.*, 612 F.2d 1018 (7th Cir. 1979) ("One entering a field already occupied by another has a duty to select a trademark that will avoid confusion."). Having deliberately chosen to make its redesigned kiosks look virtually indistinguishable from Redbox's, DVDXpress cannot now complain about the cost of having to stop deploying new kiosks that are confusingly similar to Redbox's.[10]

### D.     The public interest favors Redbox.

The public interest always favors having the truth, rather than falsehoods, injected into the stream of commerce. *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 19 (7th Cir. 1992). The public interest thus favors the entrance of an injunction to prevent false or misleading advertisements.  Similarly, in instances of trademark or trade dress infringement, "the public interest is served by the [entering of an] injunction because enforcement of the trademark laws prevents consumer confusion."  *Eli Lilly & Co. v. Nat. Answers, Inc.*, 233 F.3d 456, 469 (7th Cir. 2000).

Here, the public interest favors an injunction preventing DVDXpress from making further false and misleading claims and from creating customer confusion by using a red color on the surface of its kiosks.

### E.     Any bond required from Plaintiff should be minimal.

As there will not be a substantial cost to DVDXpress to *stop* installing new kiosks or to remove its false advertising, any bond required to be posted by Redbox should be minimal.

## V.     Conclusion

Because all four factors favor Plaintiff, the Court should grant Plaintiff's Motion and enter an Order enjoining Defendants from (i) installing further kiosks that are substantially red in

---

[10] Although Redbox is not seeking to have DVDXpress remove its existing kiosks at this time, Redbox does not waive its right to do so in the future.

CHICAGO/#3019750

color; (ii) making any further general use of the 28 Days Before Claim on its kiosks, point of sale signage, DVD packaging, and website; and (iii) making any further false or misleading statements that particular films are offered through DVDXpress "before" they are available through Redbox. The Court should further require Defendant to publish corrective advertising regarding the availability of films through its and Redbox's services.[11]

Respectfully submitted,

REDBOX AUTOMATED RETAIL, LLC

By:    /s/ Thomas R. Dee
          One of Its Attorneys

Thomas R. Dee, Bar No. 06215954
Nicole J. Wing, Bar No. 6291632
John K. Burke, Bar No. 6312447
Vedder Price P.C.
222 North LaSalle Street
Chicago, Illinois 60601
T:  +1 312 609 7500

Dated:  August 28, 2017

---

[11] *See, e.g., Northern Star Industries v. Douglas Dynamics LLC*, 848 F. Supp.2d 934, 951 (E.D. Wis. 2012) (finding that "corrective advertising [was] a key component of preliminary injunctive relief and will serve the public interest" to remedy the harm caused by defendant's false advertising); *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 18–19 (7th Cir. 1992) (corrective advertising "would serve, rather than disserve, the public interest in truthful advertising, an interest that lies at the heart of the Lanham Act.").

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing document with the Clerk of the

Court using the CM/ECF system which will send notification of such filing to all counsel of

record on August 28, 2017.


*/s/* Thomas R. Dee
_____
Thomas R. Dee