UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| REDBOX AUTOMATED RETAIL, LLC, | ) | |
| | ) | |
| Plaintiff/Counter-Defendant, | ) | 17 C 5596 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| XPRESS RETAIL LLC, | ) | |
| | ) | |
| Defendant/Counter-Plaintiff. | ) | |

**MEMORANDUM OPINION AND ORDER**

Redbox Automated Retail, LLC brought this suit against Xpress Retail LLC ("DVDXpress"), alleging trademark infringement and false advertising in violation of the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and Illinois law. Doc. 1. DVDXpress answered, asserted nine affirmative defenses, and brought two counterclaims, including one under Illinois law for tortious interference with contract. Doc. 29. Redbox moves to dismiss that counterclaim under Federal Rule of Civil Procedure 12(b)(6) and to strike five of the affirmative defenses under Rule 12(f). Doc. 39. The motion to dismiss is denied, and the motion to strike is granted in part and denied in part.

**Background**

In considering Redbox's Rule 12(b)(6) and 12(f) motions, the court assumes the truth of the counterclaim's and affirmative defenses' factual allegations, though not their legal conclusions, and draws all reasonable inferences in DVDXpress's favor. *See Smoke Shop, LLC v. United States*, 761 F.3d 779, 785 (7th Cir. 2014); *United States v. 416.81 Acres of Land*, 514 F.2d 627, 631 (7th Cir. 1975) (Clark, J.). The court must also consider "documents attached to the [counterclaim and affirmative defenses], documents that are critical to the [counterclaim and

1

affirmative defenses] and referred to in [them], and information that is subject to proper judicial notice," along with additional facts set forth in DVDXpress's brief opposing dismissal, so long as those facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013) (internal quotation marks omitted). As required on Rule 12(b)(6) and 12(f) motions, the facts are set forth as favorably to DVDXpress as those materials allow. *See Meade v. Moraine Valley Cmty. Coll.*, 770 F.3d 680, 682 (7th Cir. 2014). In setting forth those facts, the court does not vouch for their accuracy. *See Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 384 (7th Cir. 2010).

Redbox and DVDXpress both operate DVD rental services through automated vending machines called kiosks. Doc. 29 at pp. 1-2, ¶ 1. According to Redbox, the vast majority of its kiosks feature the word mark REDBOX and are branded with distinctive red coloring on their face and sides. Doc. 1 at ¶ 18. Redbox has registered trademarks for its word mark and for the kiosks' color scheme. Docs. 1-1, 1-2, 1-3, 1-4, 1-5.

Redbox filed this suit on July 31, 2017. Doc. 1. The complaint alleges that DVDXpress recently began using kiosks that are entirely red in color, making them confusingly similar to Redbox's kiosks and infringing its registered trademarks and common law trade dress rights, in violation of 15 U.S.C. §§ 1114(1) and 1125(a), respectively. *Id*. at ¶¶ 34-35, 72-98. Redbox further alleges that DVDXpress's use of red kiosks violates the Illinois Uniform Deceptive Trade Practices Act ("UDTPA"), 815 ILCS 510/2. Doc. 1 at ¶¶ 126-138. Redbox also alleges that DVDXpress infringed its word mark, in violation of 15 U.S.C. § 1114(1), by including the term "redbox" in the metadata for its website, in an attempt to capture search requests at Redbox's expense. *Id*. at ¶¶ 69-70, 105. Finally, Redbox alleges that DVDXpress falsely advertises that customers can rent movies through DVDXpress twenty-eight days before the same movies

2

become available through Redbox, in violation of the Lanham Act, 15 U.S.C. § 1125(a), the UDTPA, and the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq*. Doc. 1 at ¶¶ 42-63, 114-144.

DVDXpress's counterclaim alleges that Redbox tortiously interfered with DVDXpress's contractual relationship with Weis Markets, Inc., a retail grocery chain. Doc. 29 at pp. 57-60, ¶¶ 26-61. According to DVDXpress, Weis signed a DVD Rental Kiosk Agreement with DVDXpress in July 2017 and accordingly asked Redbox to remove its kiosks from Weis's stores. *Id*. at pp. 58-59, ¶¶ 41, 45. The agreement provided that DVDXpress would be Weis's "exclusive provider of DVD rental kiosks" and would "install its kiosks in stores currently containing Redbox kiosks, or other active movie kiosks by September 25." Doc. 47 at 8. On August 4, 2017, four days after Redbox filed this suit, Redbox's general counsel, Frederick Stein, sent a letter to Weis stating that Redbox would not remove its kiosks "on Weis's requested schedule." Doc. 29 at p. 59, ¶¶ 49-50. The letter also stated that Redbox was seeking an injunction against DVDXpress and that Redbox "would be concerned if more red DVDXpress kiosks began to appear in the marketplace." *Id*. at p. 59, ¶¶ 51-53. Redbox ultimately removed the last of its kiosks from Weis's stores in late October 2017, after DVDXpress filed its counterclaim. Doc. 47 at 8 n.12; Doc. 48 at 3-4.

## Discussion

### I. Motion to Dismiss the Tortious Interference Counterclaim

"To state a claim under Illinois law for tortious interference with contract[], a plaintiff must demonstrate: (1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of this contractual relation; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other,

3

caused by the defendant's wrongful conduct; and (5) damages." *Healy v. Metro. Pier & Exposition Auth.*, 804 F.3d 836, 842 (7th Cir. 2015). While "a subsequent breach by the other" would appear to require an allegation that the tortious interference plaintiff's contractual counterparty breached the contract, the breach element also "encompasses the situation in which the defendant prevents the plaintiff from performing the contract" by making performance impossible. *Havoco of Am., Ltd. v. Sumitomo Corp. of Am.*, 971 F.2d 1332, 1344 (7th Cir. 1992) (quoting *Scholwin v. Johnson*, 498 N.E.2d 249, 255 (Ill. App. 1986)).

Redbox contends that the counterclaim should be dismissed because it fails to allege that Weis breached its contract with DVDXpress or that Redbox made DVDXpress's performance impossible. Doc. 41 at 3-5; Doc. 48 at 2-6. Redbox's contention fails to persuade. True, the counterclaim does not *explicitly* allege that Redbox's delay in removing its kiosks from Weis's stores caused Weis to breach the contract or made it impossible for DVDXpress to perform. But such an explicit allegation is unnecessary. "[T]he Federal Rules of Civil Procedure … require[] plaintiffs to plead *claims* rather than facts corresponding to the elements of a legal theory." *Chapman v. Yellow Cab Coop.*, 875 F.3d 846, 848 (7th Cir. 2017). "It is enough to plead a plausible claim, after which 'a plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint.'" *Ibid*. (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 (2007)). "Because complaints need not identify the applicable law, it is manifestly inappropriate for a district court to demand that complaints contain all legal elements (or factors) plus facts corresponding to each." *Ibid*. (citations omitted).

It is, at the very least, plausible that the continued presence of Redbox's kiosks at Weis's stores through late October caused Weis to breach the contract or made it impossible for DVDXpress to perform. DVDXpress identifies two provisions of the contract that allegedly

4

were breached. First, by leaving its kiosks in place, Redbox may have caused Weis to breach the contract's provision that DVDXpress would be Weis's "exclusive provider of DVD rental kiosks." Doc. 47 at 8. And, second, Redbox may have made it impossible for DVDXpress "to install its kiosks in stores currently containing Redbox kiosks, or other active movie kiosks by September 25." *Ibid*.

Of course, as Redbox points out, it is theoretically possible that kiosks from different vendors can coexist in the same store. Doc. 48 at 3. Drawing all inferences in DVDXpress's favor, however, it would appear that Weis was transitioning from one "exclusive provider" of DVD-rental kiosks to another. Doc. 29 at p. 59, ¶ 47; Doc. 47 at 8. Thus, it is plausible that the Redbox machines already occupied all (or most) available positions for DVD-rental kiosks in Weis's stores. If there was nowhere for DVDXpress to put its machines other than the locations occupied by Redbox's kiosks, then the continued presence of Redbox's kiosks after September 25 made it impossible for DVDXpress to install its kiosks as the contract required. This would be true impossibility—there was simply nowhere for DVDXpress to install its kiosks—not mere "impossibility of performance as intended." *PECO Pallet, Inc. v. Nw. Pallet Supply Co.*, 2016 WL 5405107, at *13 (N.D. Ill. Sept. 28, 2016) (internal quotation marks omitted).

Redbox also suggests that it cannot plausibly be inferred from the counterclaim's allegations that Redbox's conduct was wrongful or unjustified. Doc. 48 at 5. In support, Redbox emphasizes that DVDXpress alleges that Stein informed Weis that Redbox "would not remove [its] DVD rental kiosks on Weis's requested schedule," not that Redbox refused to *ever* remove its kiosks. Doc. 29 at p. 59, ¶ 50. But the fact that Stein promised delay rather than total noncompliance does not make it implausible that Redbox's action was motivated by a desire to harm DVDXpress. Intentional delay can be just as malicious as outright refusal. And in any

5

event, the counterclaim alleges facts—specifically, that Stein informed Weis that Redbox was seeking an injunction against DVDXpress and "would be concerned if more red DVDXpress kiosks began to appear in the marketplace," *id*. at p. 59, ¶ 53—indicating that Redbox's failure to comply with Weis's requested schedule stemmed not from some independent logistical difficulty, but rather from Redbox's desire to stop (or at least slow) the expansion of DVDXpress's business.

For these reasons, the tortious interference counterclaim survives dismissal.

## II. Affirmative Defenses

Under Rule 12(f), a court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Affirmative defenses will be stricken only when they are insufficient on the face of the pleadings." *Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989).

### A. Acquiescence

The second affirmative defense alleges that Redbox's trademark claims are barred by the acquiescence doctrine. Doc. 29 at p. 48, ¶ 4. "[A]cquiescence is an equitable doctrine that permits the court to deny relief in an action for trademark infringement if the evidence shows that the owner of the mark has, through its words or conduct, conveyed his consent to the defendant's use of the mark." *Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 940 (7th Cir. 2016). Redbox argues that DVDXpress's acquiescence affirmative defense is deficient because it fails "to plead active consent." Doc. 41 at 5.

Again, parties need not "plead … facts corresponding to the elements of a legal theory." *Chapman*, 875 F.3d at 848. And according to DVDXpress, Redbox has been aware since 2002 of DVDXpress's use of the color red on its kiosks. Doc. 29 at pp. 46-47, ¶ 1. At the latest,

6

DVDXpress alleges, Redbox should have known of DVDXpress's use of red kiosks by 2007, when DVDXpress and Redbox were temporarily merged under then-parent company Coinstar, Inc. *Ibid*. One can reasonably infer that, while the two companies were merged, Redbox affirmatively approved DVDXpress's use of the red color scheme on its kiosks. That plausible scenario is sufficient for the acquiescence defense to survive at the pleading stage.

B. **Secondary Meaning**

The fourth affirmative defense, directed at Redbox's claim that DVDXpress's red kiosks infringe Redbox's trademark and trade dress rights, alleges that Redbox's use of the color red lacks secondary meaning. Doc. 29 at p. 49, ¶ 7. Redbox argues that this defense simply disputes the merits of Redbox's infringement claim and should therefore be stricken as redundant. Doc. 41 at 6.

The court has "considerable discretion" when ruling on a motion to strike matter as redundant, immaterial, impertinent, or scandalous. *See FDIC v. Giannoulias*, 918 F. Supp. 2d 768, 771 (N.D. Ill. 2013) (quoting 5C Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1382 (3d ed. 2004)). As a general rule, such motions should be denied "unless the challenged allegations … may cause some form of significant prejudice to one or more of the parties." *Ibid*. (quoting Wright & Miller, *supra*, § 1382). Redbox identifies no prejudice caused by the allegedly redundant secondary meaning defense. To the contrary, as DVDXpress points out, the defense puts Redbox "on notice" of DVDXpress's argument. Doc. 47 at 11. Accordingly, Redbox's motion to strike the secondary meaning defense is denied.

C. **Fair Use**

The sixth affirmative defense alleges that, to the extent DVDXpress uses any valid trademark owned by Redbox, DVDXpress is protected from liability by the fair use doctrine.

7

Doc. 29 at p. 50, ¶ 9.  In a trademark suit, the fair use defense is available to a defendant whose "use of the name, term, or device charged to be an infringement is a use, otherwise than as a mark, … of a term or device which is descriptive of and used fairly and in good faith only to describe the goods or services of such party."  15 U.S.C. § 1115(b)(4); *see KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 118 (2004).

Redbox argues that DVDXpress's fair use defense should be stricken as insufficient.  In so arguing, Redbox does not submit that the fair use defense is *incompatible* with the pleaded facts, just that it is "*unsupported* by facts."  Doc. 41 at 6 (emphasis added).  But, for a third time, parties need not "plead … facts corresponding to the elements of a legal theory."  *Chapman*, 875 F.3d at 848.  It is plausible that, when DVDXpress included the term "redbox" in the metadata for its website, Doc. 1 at ¶¶ 69-70, it did so "fairly and in good faith … to describe" its own kiosks, 15 U.S.C. § 1115(b)(4).  Redbox's motion to strike the fair use defense is therefore denied.

### D. Unclean Hands

The seventh affirmative defense alleges that Redbox's claims are barred, in whole or in part, by the unclean hands doctrine because Redbox itself has engaged in deceptive advertising by falsely promising "no late fees" and Blu-Ray quality discs, and by falsely asserting that certain DVDs would be available at Redbox kiosks on their release dates.  Doc. 29 at p. 50, ¶ 10.  Redbox argues that this defense should be stricken because the conduct of which DVDXpress complains is not sufficiently related to the subject matter of this lawsuit.  Doc. 41 at 7-10.

"The doctrine of 'unclean hands' … means that equitable relief will be refused if it would give the plaintiff a wrongful gain."  *Scheiber v. Dolby Labs., Inc.*, 293 F.3d 1014, 1021 (7th Cir. 2002).  The equivalent defense for an action at law is *in pari delicto*.  *See Schlueter v. Latek*, 683

F.3d 350, 355 (7th Cir. 2012) ("When … the plaintiff is asking for equitable relief, the *in pari delicto* defense is referred to as the unclean-hands defense. But the label doesn't matter and the doctrines were equated in *McKennon v. Nashville Banner Publishing Co.*, 513 U.S. 352, 360-61 (1995) … ."). "Properly applied, the maxim is to prevent 'a wrongdoer from enjoying the fruits of his transgression.'" *Packers Trading Co. v. CFTC*, 972 F.2d 144, 149 (7th Cir. 1992) (quoting *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 815 (1945)); *see also Williams Elec. Games, Inc. v. Garrity*, 366 F.3d 569, 574 (7th Cir. 2004) ("The defense of *in pari delicto* is intended for situations in which the victim is a participant in the misconduct giving rise to his claim."); *Jackson v. Bd. of Election Comm'rs*, 975 N.E.2d 583, 590 (Ill. 2012) ("[The doctrine] is based on the principle that litigants should not be permitted to enlist the aid of a court of equity to further their fraudulent or unlawful purposes or take advantage of their own wrongdoing.").

Significantly for present purposes, the unclean hands doctrine applies only "to one tainted with inequitableness or bad faith *relative to the matter in which he seeks relief*." *Packers Trading Co.*, 972 F.2d at 148 (quoting *Precision Instrument Mfg.*, 324 U.S. at 814) (emphasis added); *see also Wolfram P'ship, Ltd. v. LaSalle Nat'l Bank*, 765 N.E.2d 1012, 1024 (Ill. App. 2001) (noting that the doctrine applies to "a party who has been guilty of misconduct amounting to fraud or bad faith connected to the subject matter of the litigation"). For the purposes of an unclean hands defense, a plaintiff's misdeed is considered unrelated to the litigation's subject matter "when the right for which the plaintiff seeks protection in the injunction suit did not accrue to him because of the misdeed." *Restatement (Second) of Torts* § 940, cmt. c (1979); *see also Republic Molding Corp. v. B.W. Photo Utils.*, 319 F.2d 347, 350 (9th Cir. 1963) ("Unless the secondary meaning was acquired by virtue of Republic's misrepresentations, we find no

9

significant connection between that misrepresentation and Republic's asserted right to be free from unfair competition.").

It also bears mention that the unclean hands defense is disfavored where a plaintiff seeks to enforce laws, such as a false advertising prohibition, that protect the public. *See McKennon*, 513 U.S. at 360 (noting that "[w]e have rejected the unclean hands defense where a private suit serves important public purposes," as in antitrust suits) (internal quotation marks omitted); *Republic Molding*, 319 F.2d at 350 ("In the interests of right and justice the court should not automatically condone the defendant's infractions because the plaintiff is also blameworthy, thereby leaving two wrongs unremedied and increasing the injury to the public."); J. Thomas McCarthy, 6 *McCarthy on Trademarks & Unfair Competition* § 31:53 (5th ed.) ("[W]here the law invoked by plaintiff is really for the protection of the public, unclean hands is not a defense. That is, if the evidence shows that plaintiff is engaging in inequitable practices, but defendant is also guilty of the unfair competition charged, an injunction should be granted … ."). And the defense is particularly disfavored where the defendant could challenge the plaintiff's conduct through a counterclaim or separate suit. *See Restatement (Third) of Unfair Competition* § 32 (1995) ("If a failure to enjoin the defendant's infringement would subject the public to a significant risk of harm, even substantial misconduct by the plaintiff will not preclude an injunction, particularly when the plaintiff's misconduct can be challenged directly through a counterclaim or an independent action.").

As noted, DVDXpress identifies three misdeeds by Redbox as grounds for its unclean hands defense: (1) falsely promising not to charge late fees; (2) falsely promising to provide "Blu-Ray quality discs"; and (3) falsely asserting that certain DVDs would be available in Redbox kiosks on their release dates. Doc. 29 at p. 50, ¶ 10. The first two clearly have nothing

to do with the allegedly false advertising at issue in this case: DVDXpress's assertions that its kiosks had certain films available twenty-eight days before Redbox.

The third—Redbox's allegedly false assertions that its kiosks had certain DVDs available on their release dates—is closer to the mark, but still misses. Those false assertions are not sufficiently related to the subject matter of this litigation because they did not help Redbox acquire the right (to enjoin DVDXpress's assertions that its kiosks have certain movies twenty-eight days before Redbox) that it seeks to enforce here. *See Republic Molding*, 319 F.2d at 350 (rejecting an unclean hands defense because the plaintiff's claim was not "acquired by virtue of [its] misrepresentations," leaving "no significant connection between that misrepresentation and [the plaintiff's] asserted right"). DVDXpress's allegedly false advertising was completely independent of Redbox's. Redbox's alleged misrepresentations about the dates that certain DVDs became available at its kiosks did not force DVDXpress to respond by (allegedly) falsely advertising that its own kiosks have many DVDs twenty-eight days before Redbox's kiosks do. If DVDXpress felt the need to respond to Redbox's misrepresentations, it should have corrected Redbox's claims through truthful advertising and a Lanham Act suit or counterclaim, not by engaging in its own allegedly retaliatory false advertising. *See Campagnolo S.R.L. v. Full Speed Ahead, Inc.*, 258 F.R.D. 663, 666-67 (W.D. Wash. 2009) (striking an unclean hands defense based on the plaintiff's past misrepresentations about "the weight of its own crankset," where the plaintiff accused the defendant of misrepresenting "the stiffness-to-weight ratio of [plaintiff's] crankset").

DVDXpress incorrectly argues that *Packers Trading Co.* establishes that the unclean hands defense "is not restricted to conduct that occurred in connection with the very transaction being considered in this instance." Doc. 47 at 15 (internal quotation marks omitted). In

11

addressing the Supreme Court's decision in *Precision Instrument Manufacturing*, the Seventh Circuit in *Packers Trading* noted that, "[p]roperly applied, the maxim is to prevent 'a wrongdoer from enjoying the fruits of his transgression,' and the [Supreme] Court adds in some cases *also to avert injury to the public*." 972 F.2d at 149 (quoting *Precision Instrument Mfg.*, 324 U.S. at 815) (emphasis added). DVDXpress reads the italicized phrase as creating an additional, independent basis for the unclean hands defense. But this reading is inconsistent with *Precision Instrument Manufacturing*, which observed that "if an equity court properly uses the maxim to withhold its assistance … it *not only* prevents a wrongdoer from enjoying the fruits of his transgression but averts an injury to the public." 324 U.S. at 815 (emphasis added). Thus, the Supreme Court in *Precision Instrument Manufacturing* and Seventh Circuit in *Packers Trading* merely held that, if a court properly upholds an unclean hands defense because the plaintiff acquired the right it asserts through misconduct, the court's decision will also have the benefit of averting an injury to the public. In so holding, the courts did not say that free-floating equitable considerations about the public interest and the need to punish past misconduct can give rise to an unclean hands defense. In fact, the Supreme Court said the opposite: "[E]quity does not demand that its suitors shall have led blameless lives" only that "they shall have acted fairly and without fraud or deceit as to the controversy in issue." *Precision Instrument Mfg.*, 324 U.S. at 814-15 (citations and internal quotation marks omitted).

     DVDXpress does cite two district court opinions—*Stokely-Van Camp Inc. v. Coca-Cola Co.*, 646 F. Supp. 2d 510 (S.D.N.Y. 2009), and *Procter & Gamble Co. v. Ultreo, Inc.*, 574 F. Supp. 2d 339 (S.D.N.Y. 2008)—that recognize an unclean hands defense where the plaintiff did not acquire the rights asserted by virtue of its alleged misconduct. In both cases, the plaintiff companies had made claims in advertising that were "virtually identical" to claims later made by

their competitors, which the plaintiffs then alleged to constitute false advertising under the Lanham Act. *See Stokely-Van Camp*, 646 F. Supp. 2d at 533; *Procter & Gamble*, 574 F. Supp. 2d at 355. In both decisions, the courts denied preliminary injunctions in part due to the plaintiffs' unclean hands. *See Stokely-Van Camp*, 646 F. Supp.2d at 532-34; *Procter & Gamble*, 574 F. Supp. 2d at 353-56.

This court respectfully disagrees with that aspect of those decisions. No doubt, there is obvious hypocrisy in one company suing a competitor for doing the very same thing it did in the past (and got away with). But as objectionable as such opportunism might be, it does not warrant denying an otherwise merited injunction or other relief, especially when the relief would end a deceptive practice that is harmful to the public. The unclean hands doctrine prevents plaintiffs from profiting from their own misconduct; it does not prevent them from bringing claims against other parties who have independently engaged in similar misconduct. Because Redbox's alleged misconduct, like the alleged misconduct of the plaintiffs in *Stokely-Van Camp* and *Procter & Gamble*, was independent of and in no way caused DVDXpress's alleged misconduct, the unclean hands doctrine should not be an obstacle to relief.

Even if Redbox's alleged false advertising factored into the court's analysis, DVDXpress does not explain why equity would favor an unclean hands defense in this particular case. If anything, assuming that Redbox's claims have merit, upholding the defense would "leav[e] two wrongs unremedied and increase[e] the injury to the public." *Republic Molding*, 319 F.2d at 350. That outcome would be especially perverse when Redbox's wrongs could potentially be remedied if DVDXpress simply brought its own false advertising claim against Redbox.

In sum, none of the alleged Redbox misconduct identified by DVDXpress is sufficiently related to the subject matter of this litigation to support an unclean hands defense. Redbox's

13

motion to strike the unclean hands defense is therefore granted. This disposition renders it unnecessary to address Redbox's other arguments for striking the defense.

E. **Abandonment**

The ninth affirmative defense alleges that Redbox's trademark claims are barred by the abandonment doctrine. Doc. 29 at p. 51, ¶ 12. "[U]nder 15 U.S.C. § 1127, abandonment of a mark is an affirmative defense to a trademark infringement action." *Rust Env't & Infrastructure, Inc. v. Teunissen*, 131 F.3d 1210, 1214 (7th Cir. 1997). A mark is deemed abandoned "[w]hen its use has been discontinued with intent not to resume such use." 15 U.S.C. § 1127.

To ground its abandonment defense, DVDXpress alleges only that "Redbox has discontinued its use of the color red on its kiosks in the ordinary course of business, at least, with regard to certain locations, namely at Walmart retail stores," and that "Redbox has allowed a number of their kiosks to fade to a color that could better be described as pink." Doc. 29 at p. 51, ¶ 12. The fact that Redbox may have some blue and pink kiosks does not in any way suggest that it has discontinued use of the red kiosks covered by its trademark. In fact, in the same picture that DVDXpress uses to demonstrate that some of Redbox's kiosks have faded to pink, a red kiosk sits right alongside the "pink" one. *Ibid*. Redbox's motion to strike the abandonment defense is granted.

**Conclusion**

Redbox's motion to dismiss the tortious interference counterclaim is denied. Redbox's motion to strike is granted only as to DVDXpress's seventh (unclean hands) and ninth (abandonment) affirmative defenses, which are stricken. By agreement, Doc. 47 at 3 n.2, DVDXpress's reservation of defenses, Doc. 29 at p. 52, is also stricken. DVDXpress has until March 13, 2018 to replead its stricken affirmative defenses. *Cf. Runnion ex rel. Runnion v. Girl*

*Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519 (7th Cir. 2015) ("Ordinarily, … a plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend her complaint before the entire action is dismissed.").

February 20, 2018

United States District Judge