UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| REDBOX AUTOMATED RETAIL, LLC, | ) | |
| | ) | |
| Plaintiff/Counter-Defendant, | ) | 17 C 5596 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| XPRESS RETAIL LLC, | ) | |
| | ) | |
| Defendant/Counter-Plaintiff. | ) | |

**MEMORANDUM OPINION AND ORDER**

Redbox Automated Retail, LLC brought this suit against Xpress Retail LLC ("DVDXpress"), alleging trademark infringement and false advertising in violation of the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and Illinois law. Doc. 1. DVDXpress answered, asserted affirmative defenses, and counterclaimed. Doc. 29. The court recently struck DVDXpress's unclean hands and abandonment affirmative defenses. Docs. 84-85 (reported at 2018 WL 950098 (N.D. Ill. Feb. 20, 2018)). Now before the court is Redbox's motion for a preliminary injunction. Doc. 23. The parties conducted discovery, Doc. 31, submitted briefs, Docs. 61, 64, 72, and participated in a hearing, Doc. 87. The motion is denied.

**Preliminary Factual Findings**

Redbox and DVDXpress both operate DVD rental services through automated vending machines called kiosks. Doc. 1 at ¶¶ 4-5; Doc. 29 at pp. 1-2, ¶ 1. Redbox's kiosks feature the word mark REDBOX and are branded with distinctive red coloring on their face and sides. Doc. 24-1 at ¶ 4. Redbox has registered trademarks for its word mark and for the kiosks' color scheme. Docs. 1-1, 1-2, 1-3, 1-4, 1-5.

In early 2016, Redbox learned that DVDXpress was using kiosks that were, like Redbox's, entirely red in color. Doc. 65-3 at 8. Around the same time, Redbox also learned that DVDXpress was advertising—on its kiosks, its website, and elsewhere—that customers could rent movies through DVDXpress twenty-eight days before the same DVDs became available through Redbox. *Ibid*. At that time and for several years prior, multiple news outlets had reported that Redbox's agreements with 20th Century Fox, Warner Bros., and Universal Pictures required it to wait twenty-eight days after a DVD's release date before making the movie available to rent at its kiosks. Doc. 65-4 at 10-12.

On January 1, 2017, nearly a year after Redbox first learned of DVDXpress's conduct, several Redbox officials discussed via email DVDXpress's red kiosks and comparative "28 days before … Redbox" advertising. Doc. 65-15 at 2. As to the advertising, one official stated, "I think that's false advertising[.] We are day and date for most[.]" *Ibid*. The official then asked Redbox's chief executive officer, Galen Smith, whether DVDXpress's red kiosks infringed Redbox's "trademarks or other IP." *Ibid*. Smith replied: "No it does not. We have looked at [*sic*] many times. Nothing we can do except get these locations." *Ibid*.

On April 10, 2017, some fifteen months after Redbox first learned of DVDXpress's comparative advertising, Redbox sent a letter to DVDXpress stating that its "28 days before … Redbox" advertising was false as to "many movies" and asking DVDXpress to cease and desist. Doc. 1-6 at 2, 4. The letter requested a response by April 24. *Id*. at 4. DVDXpress did not respond—because, it says, the letter was sent to an incorrect address. Doc. 29 at p. 30, ¶ 68.

On July 31, 2017, some eighteen months after first learning of DVDXpress's red kiosks and comparative advertising, and more than three months after sending the cease-and-desist letter to which it had received no response, Redbox filed this suit. The complaint alleges that

DVDXpress's red kiosks infringe Redbox's registered trademarks and common law trade dress rights, in violation of 15 U.S.C. §§ 1114(1) and 1125(a), respectively. Doc. 1 at ¶¶ 34-35, 72-98. The complaint also alleges that DVDXpress falsely advertises that it has certain movies twenty-eight days before Redbox, in violation of 15 U.S.C. § 1125(a). *Id.* at ¶¶ 42-63, 114-125. Redbox seeks a preliminary injunction to prevent DVDXpress from installing more red kiosks and from continuing its "28 days before … Redbox" comparative advertising, and also to require DVDXpress to engage in corrective advertising. Doc. 23 at 1.

## Discussion

Injunctive relief is available under the Lanham Act "to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a) … of section 1125." 15 U.S.C. § 1116(a). "A party seeking a preliminary injunction is required to demonstrate a likelihood of success on the merits, that it has no adequate remedy at law, and that it will suffer irreparable harm if the relief is not granted." *Promatek Indus. v. Equitrac Corp.*, 300 F.3d 808, 811 (7th Cir. 2002). "If the moving party cannot establish [each] of these prerequisites, a court's inquiry is over and the injunction must be denied." *Abbot Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992).

The Seventh Circuit traditionally has applied a presumption of irreparable harm in false advertising and trademark infringement suits. *Id.* at 16; *but cf. ebay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391-94 (2006) (rejecting the presumption of irreparable harm in patent cases); *Flava Works, Inc. v. Gunter*, 689 F.3d 754, 755 (7th Cir. 2012) (same, in copyright cases). But the presumption can be rebutted by, among other things, a showing that the plaintiff unreasonably delayed in seeking preliminary injunctive relief. *See Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891, 903 (7th Cir. 2001) (holding, in a trademark case, that "[d]elay in pursuing a

3

preliminary injunction may raise questions regarding the plaintiff's claim that he or she will face irreparable harm if a preliminary injunction is not entered"); *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985) ("Significant delay in applying for injunctive relief in a trademark case tends to neutralize any presumption that infringement alone will cause irreparable harm pending trial … ."); *Silber v. Barbara's Bakery, Inc.*, 950 F. Supp. 2d 432, 441-42 (E.D.N.Y. 2013) (holding that a five-month delay "destroy[ed] a presumption of irreparable harm" in a false advertising case); J. Thomas McCarthy, 6 *McCarthy on Trademarks & Unfair Competition* § 31:32 (5th ed.) ("It has often been held that unreasonable delay in filing suit and/or in moving for a preliminary injunction can contribute to a defeat of a motion for preliminary injunction … for the reason that delay negates the moving party's ability to show the kind of 'irreparable injury' needed for preliminary relief."); *id.* at n.1 (collecting cases).

DVDXpress contends that Redbox's delay in seeking a preliminary injunction demonstrates that it will not suffer irreparable harm if that relief is denied. It is important to note that DVDXpress does not raise a laches defense, which would have required showing that it was prejudiced by or had detrimentally relied on Redbox's delay, and which, if successful, would have precluded permanent as well as preliminary injunctive relief. *See Citibank*, 756 F.2d at 276 ("Although a particular period of delay may not rise to the level of laches and thereby bar a permanent injunction, it may still indicate an absence of the kind of irreparable harm required to support a preliminary injunction."); *GTE Corp. v. Williams*, 731 F.2d 676, 679 (10th Cir. 1984) (holding the same); McCarthy, *supra*, § 31:31 ("Plaintiff's delay that would not be sufficient to be a defense to an ultimate, permanent injunction, may well suffice to support a trial judge's conclusion that, after all, there is not a very pressing need for immediate extraordinary relief … ."). And although Redbox cites laches cases in its reply brief, it does not actually assert

4

either that the standards for demonstrating laches and disproving irreparable harm are the same or that delay can disprove irreparable harm only if accompanied by prejudice to or detrimental reliance by the defendant, thereby forfeiting those points. Doc. 72 at 15-17.

Redbox concedes that it waited some eighteen months to seek injunctive relief after learning of DVDXpress's alleged trademark infringement. It denies, however, having delayed in bringing its false advertising claim. It therefore is sensible to address the two claims separately.

## I. Trademark Infringement Claim

A lengthy, unexplained delay in seeking relief calls into question "how urgent the need for [preliminary] equitable relief really is." *Michigan v. U.S. Army Corps of Eng'rs*, 667 F.3d 765, 788 (7th Cir. 2011). Redbox's eighteen-month delay in seeking relief on its trademark claim is more than long enough to raise serious doubt regarding the appropriateness of granting the "extraordinary remedy" of a preliminary injunction. *Winter v. NRDC*, 555 U.S. 7, 24 (2008). Several courts of appeals have affirmed denials (or reversed grants) of preliminary injunctions because of much shorter delays in filing suit. *See*, *e.g.*, *Garcia v. Google, Inc.*, 786 F.3d 733, 746 (9th Cir. 2015) (en banc) (five-month delay); *Apple, Inc. v. Samsung Elecs. Co.*, 678 F.3d 1314, 1325-26 (Fed. Cir. 2012) (several-month delay); *Tough Traveler, Ltd. v. Outbound Prods.*, 60 F.3d 964, 968 (2d Cir. 1995) (nine-month delay); *see also Ixmation, Inc. v. Switch Bulb Co.*, 2014 WL 5420273, at *7-8 (N.D. Ill. Oct. 23, 2014) (four-and-a-half month delay); *MB Fin. Bank, N.A. v. MB Real Estate Servs.*, 2003 WL 22765022, at *8 (N.D. Ill. Nov. 21, 2003) (eight-month delay). The longest such delay ever permitted by the Seventh Circuit appears to be nine months. *See Vaughan Mfg. Co. v. Brikam Int'l, Inc.*, 814 F.2d 346, 351 (7th Cir. 1987), *overruled on other grounds by Two Pesos, Inc. v. Taco Cabana*, 505 U.S. 763, 766 n.4 (1992). A recent survey of federal trademark decisions concluded that "if the delay is greater than 12

months, preliminary injunctive relief is usually denied." McCarthy, *supra*, § 31:31 (citing Sandra Edelman & Fara S. Sunderji, *Delay in Filing Preliminary Injunction Motions: 2015 Edition*, 105 Trademark Rep. 1012 (2015)).

Redbox cites only one case where a delay (two years) longer than its delay here did not defeat preliminary injunctive relief, but that decision incorrectly conflated the laches and irreparable harm standards in holding that the delay did not defeat irreparable harm given that the defendant could not prove detrimental reliance. *See Marathon Petroleum Co. v. Mt. Everest Real Estate Holding Co.*, 2012 WL 5272508, at *2 (E.D. Wis. Oct. 24, 2012). With respect, that analysis misses the mark: whether the *defendant* has detrimentally relied on a delay does not affect whether the *plaintiff* has suffered irreparable harm.

It is true that a lengthy delay might not undermine a claim of irreparable harm if the delay was "caused by the plaintiff's ignorance of the defendant's competing product or the plaintiff's making good faith efforts to investigate the alleged infringement." *Tough Traveler*, 60 F.3d at 968. But Redbox has no such excuse, having admitted in an interrogatory response that it learned of DVDXpress's red kiosks in "early calendar year 2016." Doc. 65-3 at 8. At the hearing on its motion, Redbox's counsel asserted that, at first, only lower-level employees knew of DVDXpress's alleged infringement. But that assertion is not backed by evidence in the record, and in any event Redbox does not explain why it would be relevant to determining when it, as a *company*, learned of the infringement.

Standing alone, Redbox's unexplained eighteen-month delay in seeking injunctive relief on its trademark claim precludes a finding of irreparable harm. Icing on the cake is provided by the January 1, 2017 email from Redbox's CEO, which stated that the company had already looked "many times" into the matter of DVDXpress's red kiosks and concluded that there was

6

no infringement. Doc. 65-15 at 2. That email demonstrates that Redbox was "well aware of [its] rights and had concluded that they were not violated." *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 39 (2d Cir. 1995). Having decided, at the highest levels and after multiple inquiries, that DVDXpress was not infringing its trademarks, Redbox cannot now assert—at least not persuasively—that the infringement is so obvious and harmful that a preliminary injunction is warranted. *See Krueger Int'l, Inc. v. Nightingale Inc.*, 915 F. Supp. 595, 613 (S.D.N.Y. 1996) (Sotomayor, J.) ("I decline to manufacture a sense of urgency that is not supported by plaintiff's own conduct.").

Because Redbox has not demonstrated irreparable harm as to its trademark infringement claim, its motion for a preliminary injunction on that claim is denied. *See Graham v. Med. Mut. of Ohio*, 130 F.3d 293, 294 (7th Cir. 1997) (affirming the denial of a preliminary injunction because the plaintiff "ha[d] not demonstrated that [she] will suffer irreparable harm by the denial of this injunction") (internal quotation marks omitted); *BRK Brands, Inc. v. Nest Labs, Inc.*, 28 F. Supp. 3d 765, 770 (N.D. Ill. 2014) (Posner, J.) (denying a preliminary injunction because the plaintiff had not demonstrated irreparable harm, and noting that "[w]ithout irreparable harm there's no reason to award the plaintiff any relief before the merits of his claim are determined after a full litigation").

## II.     False Advertising Claim

Redbox argues that it has not delayed at all in bringing its false advertising claim, even though it admittedly learned of DVDXpress's comparative advertising campaign in early 2016, because it seeks relief based only on DVDXpress's advertising regarding DVDs released between December 2016 and July 2017. Doc. 72 at 16-17. But the *content* of DVDXpress's advertising—"Rent it here first 28 days before … Redbox"—has not changed since early 2016,

7

even if the movies to which the slogan referred have changed as new DVDs were released. If that comparative advertising claim was false when Redbox learned about it in early 2016, then Redbox should have brought suit then, rather than waiting over a year to challenge it.

At the hearing, Redbox maintained that DVDXpress's comparative advertising was only "partially false" in early 2016, and that Redbox brought suit when the advertising became false as to more DVDs. According to Redbox, this change occurred when its new agreements with Warner Bros., Fox, and Universal Pictures decreased the delay between a DVD's release and its availability at Redbox kiosks. Redbox cites news reports of those agreements in its reply brief, although the agreements themselves are not in the record. Doc. 72 at 17 n.42. The news report of the Warner Bros. agreement is dated May 22, 2017; the report of the Fox agreement is dated July 13, 2017; and the report of the Universal agreement is dated December 21, 2017. *Ibid*.

If Redbox did in fact have a 28-day delay for *all* Warner Bros., Fox, and Universal DVDs in early 2016, and then filed suit shortly after the new agreements eliminated or reduced the delay, then Redbox perhaps could not be faulted for waiting to seek relief, for it would have done so as soon as DVDXpress's advertising became false. But out of the twenty-four recent movies that Redbox claims it had available within twenty-eight days of their release dates, it identifies only eight that were distributed by Warner Bros., Fox, or Universal, leaving sixteen that were distributed by other studios. Doc. 61-1 at ¶¶ 35(d), 35(h), 35(i), 35(j), 35(k), 35(l), 43, 44(e). (Redbox identifies twelve additional movies that, it alleges, DVDXpress falsely advertised to have twenty-eight days before Redbox. *Id*. at ¶¶ 45-46. But Redbox does not say when those allegedly false advertisements were made or when the DVDs were released, let alone identify the studios that distributed them, so they do not affect the assessment of Redbox's delay.) And, significantly, Redbox points to no evidence that DVDXpress's comparative advertising as to

8

DVDs from those other studios was any less false in early 2016 than it was when DVDXpress sent its cease-and-desist letter on April 10, 2017, or when it filed suit on July 31, 2017. Even as to the Warner Bros., Fox, and Universal DVDs, Redbox itself acknowledges that the 28-day delay did not apply categorically before its agreements with those studios were amended. Doc. 72 at 5. That is confirmed by the fact that, out of the eight DVDs distributed by those three studios, all of which Redbox claims to have made available fewer than twenty-eight days after their release dates, five were released before the new agreements went into effect. Doc. 61-1 at ¶¶ 35(h), 35(i), 35(j), 35(k), 35(l).

Given that only three of the twenty-four DVDs identified by Redbox were plausibly affected by the new agreements, it cannot be that DVDXpress's comparative advertising became substantially false as a result of those agreements. And Redbox has not identified any other reason why DVDXpress's advertising would have been any less false in early 2016, when Redbox first learned about it, than it was in April or July 2017. Indeed, the above-referenced email shows that by January 1, 2017 at the latest, at least one Redbox official believed that DVDXpress had engaged in "false advertising" because "[w]e are day and date for most [DVDs.]" Doc. 65-15 at 2.

Redbox's delay in asserting its false advertising claim, therefore, began in early 2016, at the same time as its delay in asserting its trademark infringement claim. The false advertising delay arguably ended earlier, however, as Redbox sent its cease-and-desist letter to DVDXpress on April 10, 2017, some three months before filing suit on July 31. Yet there is good reason not to stop the clock when the letter was sent. If the letter had led to negotiations with DVDXpress, then Redbox perhaps could not be faulted for waiting to see if the dispute could be resolved out of court. *See Times Mirror Magazines, Inc. v. Las Vegas Sports News, LLC*, 212 F.3d 157, 169

9

(3d Cir. 2000) (holding that a fifteen-month delay did not undermine the plaintiff's claim of irreparable harm because the delay was "attributable to [settlement] negotiations between the parties"). But DVDXpress never answered the letter, Doc. 29 at p. 30, ¶ 68, and Redbox proceeded to wait a further three months before filing suit. That delay, no less than the fifteen-month delay preceding the letter, severely undermines any sense of urgency that might otherwise have attached to Redbox's request for preliminary injunctive relief. *See New Dana Perfumes Corp. v. Disney Store, Inc.*, 131 F. Supp. 2d 616, 630 (M.D. Pa. 2001) (holding that a five-month delay after sending a cease-and-desist letter, in addition to a two-month delay before sending the letter, undercut a claim of irreparable harm).

In sum, Redbox's eighteen-month delay in seeking injunctive relief on its false advertising claim defeats its assertion of irreparable harm, just as it did for its trademark infringement claim. And even if the delay is deemed to have ended when Redbox sent the cease-and-desist letter, Redbox still could not demonstrate irreparable harm, as a fifteen-month delay remains well outside of the twelve-month window beyond which federal courts usually decline to grant preliminary injunctions. *See* McCarthy, *supra*, § 31:31. It would be particularly inappropriate to make an exception here, where Redbox's CEO received an email seven months before suit was filed from a company official describing DVDXpress's comparative advertising as "false" as to "most" of Redbox's DVDs. Doc. 65-15 at 2. Again, the court "decline[s] to manufacture a sense of urgency that is not supported by plaintiff's own conduct." *Krueger*, 915 F. Supp. at 613. No preliminary injunction will issue on the false advertising claim.

## Conclusion

Redbox's motion for a preliminary injunction is denied.

March 9, 2018

_____
United States District Judge